# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DONETTA RAYMOND, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-1282-JTM-GEB** |
| | ) | |
| **SPIRIT AEROSYSTEMS HOLDINGS, INC., and** | ) | |
| **SPIRIT AEROSYSTEMS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Defendants' Motion for Protective Order (**ECF No. 193**).  On January 31, 2017, the Court convened an in-person hearing to address the pending motion.  Plaintiffs appeared through counsel, Randall K. Rathbun.  Defendants appeared through counsel, James M. Armstrong.  After consideration of both the arguments of counsel and the parties' briefing, Defendants' Motion (ECF No. 193) is **DENIED** for the reasons outlined below.

## I.    Background

### A.    Nature of Suit

In July and August, 2013, defendant Spirit AeroSystems ("Spirit")[1] conducted a "reduction in force" ("RIF") which terminated the employment of the named Plaintiffs [2]

---

[1] Throughout this Order, the use of "Spirit" will refer to defendant Spirit AeroSystems, as well as its parent company, defendant Spirit AeroSystems Holdings, Inc.

and more than two hundred other workers. (Compl., ECF No. 1, at 5.)  Plaintiffs claim the RIF eliminated a disproportionate number of Defendants' older employees.  Plaintiffs filed this collective action in July 2016, claiming Defendants wrongfully terminated their employment and/or later failed to consider them for new job openings as a result of their age and, in some cases, the older employees' (or family members') medical conditions and related medical expenses.  In addition to the collective action claims under the Age Discrimination in Employment Act[3] ("ADEA"), some Plaintiffs also assert individual ADEA claims, and some Plaintiffs claim their termination violated the Americans with Disabilities Act[4] ("ADA") and/or the Family and Medical Leave Act[5] ("FMLA").

Defendants allege Plaintiffs and others like them were discharged, and not considered for rehire, for lawful reasons—primarily their poor performance.  Defendants claim, in order to help lessen the effects of employment, they offered every laid-off employee a severance package that included both monetary benefits and career services. (ECF No. 194, at 1.)  Most of the terminated employees accepted the offered benefits in exchange for signing a release of claims against Spirit. (*Id.*)  However, with the exception of approximately nine Plaintiffs,[6] the terminated employees now claim the releases are invalid, in addition to their wrongful termination claims.

---

[2] The initial Complaint was filed by 24 named Plaintiffs.  In October 2016, a number of Consents to Opt In were filed (ECF Nos. 31-103; 104-152, 154), bringing the number of Plaintiffs to more than 70.
[3] 29 U.S.C. § 621 et seq.
[4] 42 U.S.C. § 12101 et seq.
[5] 29 U.S.C. § 2601 et seq.
[6] This number was reported by the parties during oral argument on January 31, 2017.

**B.      Procedural Posture**

This matter has progressed in a unique manner.  Following an in-person status conference on October 19, 2016, the Court entered, at the parties' request, a phased discovery plan (Phase I Scheduling Order, ECF No. 153).  The initial discovery phase is intended to focus solely on the validity of the releases signed by Plaintiffs.  Once the validity of the releases is resolved through dispositive motions, as anticipated by the parties, the case will progress to a second phase of discovery, which will focus on Plaintiffs' wrongful termination claims.

On September 20, 2016, as part of the initial discovery phase, Plaintiffs served initial written discovery on Defendants (ECF No. 29).  Since that date, Defendants received multiple extensions of the response deadline.  Although Plaintiffs agreed to the first three requested extensions, they were not willing to agree to a fourth extension (*see* Pls.' Mem. Opp'n to Defs.' Mot. for Extension, ECF No. 186).  Following a disputed motion for the most recent extension of time (ECF No. 192), this Court ordered Defendants to respond to Plaintiffs' discovery by January 31, 2017 (Order, ECF No. 192).

The agreed Phase I Scheduling Order did not contain specific discovery protocols regarding production of electronically stored information or the handling of materials for which the parties assert privilege or work product protection.  Simultaneous with production of documents, the parties have been working toward an agreement on

procedures governing discovery.  However, they have been unable to agree on the timing of logging privileged[7] documents, which led to the instant motion.

## II.      Defendants' Motion for Protective Order (ECF No. 193)

### A.      Arguments

#### 1.      Defendants' Position

Defendants suggest, if a producing party objects to production of documents on some non-privilege basis (such as relevance or overbreath), the withheld documents need not be immediately included on a privilege log.  They propose neither party would waive its privilege objection by excluding information from a privilege log until after the information has been deemed otherwise discoverable, either by agreement or decision by the Court.  Defendants argue their proposal comports specifically with the 1993 advisory committee's note to Fed. R. Civ. P. 26(b)(5) and recent caselaw from this District.

Additionally, Defendants claim as an employer, the majority of privileged documents subject to discovery are primarily in their possession.  Therefore, the burden to log such documents falls to them.  And, the privileged communications sought by Plaintiffs equates to potentially thousands of documents.  Logging them—regardless of their discoverability—would create an unreasonable, disproportionate, and costly burden for Defendants.

---

[7] For the remainder of this Order, the term "privilege" will encompass any information sought through discovery which is "subject to a claim of privilege or of protection as trial-preparation material" under Fed. R. Civ. P. 26(b)(5).

As an example of the potential burden, Defendants contend some of the documents sought by Plaintiffs lie outside the scope of Phase I discovery.  Many of Plaintiffs' discovery requests identify a time frame of March 1, 2013 through December 31, 2013.  However, because the waivers are the sole issue in Phase I, and the waivers were signed in July and August 2013, Defendants argue information from September to December 2013 is irrelevant and the requests are overbroad.  Forcing Defendants to include all of the privileged communications from that time frame, despite their non-privilege objections, would be burdensome and unreasonable.

Defendants seek two forms of relief:  1) for entry of a Protective Order, specifying failure to log a privileged document also covered by a non-privilege objection when initially responding to discovery, does not automatically waive the privilege objection, until the non-privilege discoverability of the document is determined.  Defendants also ask the Court to 2) extend any deadline for production of privilege logs until 21 days after the Court issues a decision on this issue.

## 2.      Plaintiffs' Position

Plaintiffs disagree with this method of production, and argue "Rule 26(b)(5)(A)'s privilege log requirement is not delayed or excused when other non-privilege objections are asserted." (Resp., ECF No. 195 at 8).   Plaintiffs cite multiple decisions from the District of Kansas to support their argument that all responsive privileged documents must be identified and a log produced at the time of the initial response, regardless of

whether other non-privilege objections are also stated.  By failing to produce a privilege log, a responding party would waive its privilege objection.

Plaintiffs disagree their requests are overbroad or seek irrelevant information, and reveal Defendants asserted general non-privilege objections to all of Plaintiffs' 22 interrogatories.   Plaintiffs believe granting Defendants' request could indefinitely postpone identification (and therefore any assessment) of any privileged documents withheld.

In light of Defendants' previous extensions of their discovery response deadlines, Plaintiffs contend the current request would essentially bifurcate—thus delay—the already-phased discovery, and lead to increased conference and motion practice. Additionally, Plaintiffs believe the parties' initial and well-thought-out discovery agreements would significantly reduce any burden on Defendants.

### 3.    Compliance with D. Kan. Rule 37.2

Throughout the briefing, and during the in-person hearing, the parties demonstrated their multiple attempts to resolve their differences on this and other discovery issues.  Therefore, the Court is satisfied they have sufficiently conferred as required by D. Kan. Rule 37.2.  However, despite their attempts, the parties could not resolve this specific issue, leading to Defendants' motion for protective order.

### B.   Legal Standards

### 1.   Fed. R. Civ. P. 26

The parties agree Fed. R. Civ. P. 26 and 34 govern this dispute.  The Court first examines Rule 26(b)(5), which outlines a party's duties when withholding documents on claims of privilege.  Section 5(A) of the rule states:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i)   expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 25(b)(5)(A).  In explanation of the rule, the 1993 advisory committee's note emphasizes the need for an objecting party to "provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege" but acknowledges the "rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection."  Although it stops short of articulating the specific description required under Rule 26(b)(5)(ii), the committee opines, "[d]etails concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories."  By way of example, the committee explains,

> The obligation to provide pertinent information concerning withheld privileged materials applies only to items "otherwise discoverable."  If a

broad discovery request is made—for example, for all documents of a particular type during a twenty year period--and the responding party believes in good faith that production of documents for more than the past three years would be unduly burdensome, it should make its objection to the breadth of the request and, with respect to the documents generated in that three year period, produce the unprivileged documents and describe those withheld under the claim of privilege. If the court later rules that documents for a seven year period are properly discoverable, the documents for the additional four years should then be either produced (if not privileged) or described (if claimed to be privileged).

Fed. R. Civ. P. 26(b) advisory committee's note to 1993 amendment.

In the event a party wishes to withhold privileged information, but believes providing the information required under Rule 26(b)(5) would be an unreasonable burden, the party may seek relief through a protective order under Rule 26(c).[8] Subsection (c) allows the court, "for good cause, [to] issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense."  The Court then has broad discretion to utilize such a protective order to specifically define and/or narrow the disclosure or discovery, including the terms, timing, and method of discovery.[9]

### 2.    Fed. R. Civ. P. 34

Though Rule 26 governs the scope of discovery, Rule 34 governs a party's response to requests for production of documents.  Under Rule 34, the party must either produce the documents requested "or state with specificity the grounds for objecting to

---

[8] Fed. R. Civ. P. 26(b) advisory committee's note to 1993 amendment.
[9] Fed. R. Civ. P. 26(c)(1)(A)-(H).

the request."[10]  "An objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest."[11]

### C.    Analysis

Both parties cite authorities which analyze Rules 26 and 34 in ways they believe to be persuasive to their arguments.  The Court reviewed each authority, but finds none to be entirely persuasive, as each case cited addresses the issue of privilege in the context of motions to compel discovery, rather than a preemptive request to relieve a party of its duty to provide a privilege log.  However, the authorities are analogous and are briefly addressed.

Defendants rely in large part upon the advisory committee note to Rule 26(b), which they contend describes precisely the relief they seek from the Court.  However, ignored are the distinguishing facts described by the committee in its example.  In its comments, the committee describes a situation where a facially overbroad request seeks 17 years of potentially unnecessary information.[12]  But the disputed scope in this case is nothing near the overbreadth described by the advisory committee.

In the instant case, Defendants suggest Plaintiffs' requests seek information from a four-month period in 2013, after Plaintiffs' terminations, which may not be relevant to the Phase I issue of waiver.  Though Plaintiffs argue otherwise, at this juncture, the Court

---

[10] Fed. R. Civ. P. 34 (b)(2)(B).
[11] Fed. R. Civ. P. 34(b)(2)(C).
[12] *See supra* Section B.1, pp. 7-8.

will not decide on the limited information presented whether the four months of information is actually relevant to Phase I discovery.  Most importantly, the parties agree nine Plaintiffs make no waiver claims, and their wrongful termination claims will survive the Phase I dispositive motions and proceed to Phase II discovery.  Therefore, the issue of waiver (and thus Phase I itself) does not pertain to *all* named Plaintiffs.  Even if the four-month period of information is determined to be irrelevant or overbroad regarding Phase I, it will almost certainly be relevant to Phase II discovery.

In addition to the advisory note, Defendants cite one case from this district, *Robinson v. City of Arkansas City, Kan. ("Robinson I")*,[13] to support their claim that a privilege log is not required until the ultimate discoverability of information is decided. In *Robinson I*, plaintiff Trence Robinson made civil rights and employment claims against his employer, the City of Arkansas City, after being denied a promotion. Robinson believed his former supervisor modified personnel records after offering to promote him, and discovery of electronically stored information became disputed. Although the City produced a privilege log weeks after its responses, it did not make privilege objections to Robinson's discovery requests (except one, Request No. 6) because it believed "plaintiff's overly broad requests did not obligate it to produce or identify privileged information" at the time of its initial responses.[14]

---

[13] No. 10-1431-JAR-GLR, 2012 WL 603576, at *11 (D. Kan. Feb. 24, 2012).
[14]  *Id*. at *10.

When ruling on the City's motion to compel (among other motions), the court discussed that, except in one "extreme circumstance" where a single request (No. 5) was "facially objectionable in its entirety,"

> . . . Rule 26(b)(5)(A) does not otherwise eliminate the duty to produce non-privileged documents responsive to the other requests or to identify privileged documents to the extent the requests are not objectionable. Even when a request is objectionable as overly broad or unduly burdensome, the responding party has a duty to lodge its objections, determine the extent to which the request is not objectionable, and produce unprivileged documents and identify privileged ones *to that extent*. Except for atypical requests . . . that are objectionable in their entirety, the "otherwise discoverable" language merely affects the scope of the description, if any, required to comply with Rule 26(b)(5).
>
> Rule 26(b)(5)(A), moreover, does not alter the requirement of Fed. R. Civ. P. 34(b)(2) that parties timely assert their objections—even objections of privilege and work product protection. It merely requires parties to expressly assert their claims of privilege or protection and describe items not produced.
>
> . . .
>
> And *in extreme cases* . . . the breadth of a discovery request may entirely excuse a failure to assert an objection of privilege, even though waiver never actually becomes an issue in those cases. But in other circumstances the breadth of a discovery request does not provide good cause for failing to assert an objection of privilege or work product.[15]

Defendants here point to *Robinson I*'s use of the "to that extent" language (emphasized above) to support their position.  But though the court acknowledged the City's position found "marginal support" in the language of Rule 26(b)(5)(A),[16] the facts and analysis of *Robinson I* are distinguishable.  In *Robinson I*, the City not only produced no initial privilege log, but asserted no privilege objection to Robinson's requests (aside

---

[15] *Id*. at *11 (emphasis added).

[16] *Id*. (explaining that this rule only applies "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material").

from Request No. 6). The *Robinson I* court focused on the timing of the objections, rather than the production of a privilege log; and found the unasserted objections waived. The court went on to note, "[p]arties who merely object that a document request is overly broad or seeks irrelevant documents [without making a simultaneous privilege objection] take on the risk that the Court disagrees."[17] Although it focused primarily on the assertion of the objection itself, the court did not allow the City carte blanche to postpone its Rule 26(b)(5) requirements, but actually found the practice appropriate only in "extreme circumstances." *Robinson I* clearly states, "In general the federal rules do not contemplate piecemeal objections to discovery requests. The rules provide a specific time for parties to respond to requests for discovery."[18]

The magistrate judge's opinion in *Robinson I* was reviewed by the district judge in *Robinson II*.[19] The district court upheld the earlier decision, but clarifies that *Robinson I*, and therefore the district court's review, was "specifically limited . . . to the failure to assert the objection, *not to any failure to timely produce a privilege log* or to adequately describe documents listed on the privilege log."[20]

Although other opinions in this district are also instructive, none appear to address the precise issue presented by Defendants. For example, in *Cooper v. Union Pac. R.R. Co.*,[21] Union Pacific argued it did not waive its privilege objections by failing to provide

---

[17] *Id*.

[18] *Id*.

[19] *Robinson v. City of Arkansas City, Kan. ("Robinson II")*, No. 10-1431-JAR, 2012 WL 1674255, at *4 (D. Kan. May 14, 2012)

[20] *Id*.

[21] No. 16-1073-EFM-KGG, 2016 WL 6093701, at *2-*3 (D. Kan. Oct. 19, 2016).

a privilege log in its initial responses, and like Defendants here, believed it was not obligated to do so until its overbreadth objection was decided.  During the briefing on the motion to compel, Union Pacific provided a privilege log.  The *Cooper* court found Union Pacific was "slow playing" the production of its privilege log and, while not finding waiver of the privilege, did issue sanctions.  However, due to the production of the log prior to its ruling, the court did not analyze the burden on Union Pacific to log the documents that may or may not be otherwise discoverable, or address the comments to Rule 26(b)(5).

More closely aligned to this case is the ruling in *Linnebur v. United Tel. Ass'n ("UTA").*[22]  In *Linnebur*, UTA did not search for the alleged privileged material, or provide a log, because it believed the requests were otherwise objectionable based on overbreadth and relevance.  The *Linnebur* court found that UTA failed to provide authority for "its position that an objecting party is somehow relieved of its obligation to substantiate its privilege and work-product objections because it also asserts other objections" and determined the "proposition is contrary to the plain language of the Federal Rules."[23]

One opinion from this district which addressed the advisory committee's notes to Rule 26(b)(5) is *Thermal Sols., Inc. v. Imura Int'l U.S.A., Inc.*[24]  There, Thermal Solutions claimed production of a privilege log was unnecessary, in part because doing so created an undue burden.  The court acknowledged a party may be unduly burdened by creating a

---

[22] No. 10-1379-RDR-KGS, 2012 WL 1183073, at *3 (D. Kan. Apr. 9, 2012).
[23] *Id.* at *3.
[24] No. 08-2220-JWL-DJW, 2010 WL 11431562, at *9 (D. Kan. Apr. 28, 2010).

log "when voluminous documents are claimed to be privileged or protected, *particularly if the items can be described by categories*."[25]   However, it found that Thermal Solutions submitted "no affidavit or other evidence explaining . . . why it would be unduly burdensome for [it] to create a privilege log"[26] and therefore failed to support its claim.

In this case, Defendants have made some showing that providing a detailed privilege log is overly onerous and may create a significant burden.[27]   But in this instance—where the timeframe of asserted overbreadth amounts to only four months, and relevance is only questioned regarding whether the discovery is appropriate for Phase I or Phase II of discovery, both of which are likely to occur—the practical burden to Defendants is diminished.

And, the parties have worked dutifully to reach some agreements[28] regarding production of privilege logs which list documents, withheld on the basis of privilege, in

---

[25]  *Id*. (emphasis added).

[26]  *Id*.

[27]  *See* Decl. of Boyd A. Byers, ECF No. 194-1 at 18, Ex. 6.

[28]  *See* Pls.' Mem. Opp'n, ECF No. 195, at 4-5.  The parties agreed to minimize the information included in privilege logs as follows:

    1.  For activities prior to April 1, 2014, the parties agree that:

        a. The producing party need not describe on its privilege log email or other documented communications that occurred only between and among outside counsel.

        b. For all other documents that are kept in an outside attorneys' internal paper or electronic files, other than drafts of training of managers regarding RIF communication plan or drafts of training of HR personnel, the producing party's privilege log may group documents into categories, without the need to individually list each document. Examples of such categories include "drafts of release/waiver/severance agreements," "drafts of OWBPA disclosure statements" and "documents relating to SPEEA grievances and appeals regarding the August reduction in force." A complete list of categories has not been agreed to. If a party objects to a particular category, the parties will attempt to reach agreement and

categories rather than individually.   Even if Defendants are not relieved of their obligation to describe the documents withheld on the basis of privilege, the burden to do so may be simplified by fashioning privilege logs that describe documents categorically. This "categorized" method of production is referenced specifically in the comment to the 1993 amendment to Rule 26(b)(5) and the *Thermal* opinion, and would ease Defendants' burden of production while providing the Plaintiffs (and ultimately, if necessary, the Court) enough information to assess the validity of the privilege objection.

Caselaw makes it abundantly clear that the court not only has the discretion—but in fact, should—consider the unique facts of each case when examining issues of privilege (and waiver of the privilege, as the case may be).[29]   Under the facts of this case, the demonstrated burden to Defendants does not outweigh the interest in the case proceeding without piecemeal discovery.   Due to the unique nature of the phased

---

reserve the right to request that the court require individual listing of documents in the disputed category.

c. The parties agree that this process does not waive the attorney-client, attorney work product, or any other privilege with respect to such internal attorney documents and communications. This agreement does not apply to copies of such documents or communications that the attorneys transmitted to their client(s), and the parties must describe such documents on a privilege log (if they are otherwise relevant and responsive).

2.   From April 1, 2014 forward, any communication between the parties' attorneys and their respective clients and consultants relating to the subject matter of this case or any document created in anticipation of this litigation does not have to be disclosed on a privilege log. Excluded from this provision is any document or record of communication regarding preservation or destruction of any documents or any record of communication regarding the subject matter of this case. The parties agree that they do not waive any privilege or protection by following this process.

[29] *See Robinson II*,   No. 10-1431-JAR, 2012 WL 1674255, at *5 n. 18 (noting "this determination is to be made on a case-by-case basis") (citing *Mike v. Dymon*, No. 95–2405–EEO, 1996 WL 674007, at *1 (D. Kan. Nov. 14, 1996), and *Smith v. MCI Telecommunc'ns Corp.,* 124 F.R.D. 665, 686 (D. Kan. 1989)).

discovery, the timing of Defendants' objections and previous extensions, the parties' discovery agreements which allow the privilege log to list categories of documents, and the likelihood that the information sought will ultimately be relevant to Phase II discovery, the Court DENIES Defendants' request for a protective order. However, the Court will allow Defendants a reasonable, additional time period to prepare and serve its privilege log(s).

Although not addressed at the motion hearing, after review of the parties' briefs the Court notes with some concern the parties' complaints regarding the initiation of discovery prior to either a Rule 26(f) scheduling conference[30] or issuance of a scheduling order setting forth specific discovery protocol. The Court commends the parties for reaching early pretrial scheduling agreements and proposing the phased discovery; but the parties are reminded the progress of the case (or lack thereof) thus far is a direct result of the agreements presented to this Court.[31] In order to document the parties' e-discovery protocol and privilege log protocol, and to prevent additional litigation on these issues, the parties are ordered to confer and submit proposed Rule 26(f)(3) discovery agreements—preferably agreed, but in the form of motions if absolutely unable to do so—**no later than March 17, 2017**.

---

[30] *See, e.g.*, email between counsel (Jan. 18, 2017) (ECF No. 194-1, Ex.2) ("since we have not had a regular scheduling conference in yet in this case").

[31] The Court conducted a scheduling conference, without the benefit of a Rule 26(f) report, at the parties' suggestion and agreement, and issued the Phase I Scheduling Order (ECF No. 53) on October 20, 2016.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Protective Order (**ECF No. 193**) is **DENIED** as set forth above.

**IT IS FURTHER ORDERED** that Defendants' request for additional time to produce its privilege log to Plaintiffs is **GRANTED**. Defendants must produce their privilege log on or before **March 17, 2017**.

**IT IS FURTHER ORDERED** that the parties submit proposed discovery protocol, as described above, no later than **March 17, 2017**. If the parties need or agree to additional time for either the discovery agreements or production of the privilege log, they may notify the Court of any agreements or contact the Court for conference.

**IT IS SO ORDERED**.

Dated this 22nd day of February, 2017, at Wichita, Kansas.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge