IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONETTA RAYMOND, *et al.*,

Plaintiffs,

vs.                                    Case No. 16-1282-JTM

SPIRIT AEROSYSTEMS HOLDINGS, INC., *et al.*,

Defendants.

MEMORANDUM AND ORDER

Following Spirit AeroSystems' dismissal of 200 employees in July and August of 2013, some of the dismissed employees instituted the present action, alleging the reduction-in-force dismissals disproportionately affected older employees.[1] The present action was filed in July 2016, and plaintiffs advance claims under the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), and the Family and Medical Leave Act (FLMLA).

The matter is before this court on objections filed by the plaintiffs to a decision by the magistrate judge (Dkt. 233) granting Spirit's Motion for Protective Order as to two

---

[1]Plaintiffs have sued both Spirit AeroSystems and its parent SpiritAerosystems Holding, Inc. The court will refer to both corporate defendants as Spirit.

caches of internal Spirit documents, including privileged and confidential materials, which were mysteriously delivered to plaintiffs' Denver counsel in 2014. Judge Birzer addressed the issue after a hearing and the submission of an extensive evidentiary record. The record fully supports the factual findings of the magistrate judge. The court adopts and incorporates those findings here. The court finds Judge Birzer's decision to issue the protective order, and approving limited sanctions, is not clearly erroneous or contrary to controlling law. The plaintiffs' objections are overruled.

In reviewing a magistrate judge's order relating to nondispositive pretrial matters, the district court does not conduct a *de novo* review. The court instead applies a more deferential standard, and will affirm the order unless the objecting party shows that the order is "clearly erroneous or contrary to the law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This is a high burden. "The clearly erroneous standard 'requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *U.S. Fire Ins. Co. v. Bunge N.A., Inc.*, 244 F.R.D. 638, 641 (D. Kan. 2007) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)). Under this deferential standard, the court will affirm a determination by the magistrate judge "on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon" by the magistrate judge. *Shroff v. Spellman*, 604 F.3d 1179, 1187 n. 4 (10th Cir.2010). In contrast, a party opposing the imposition of sanctions waives any additional arguments which were not presented to the magistrate judge. *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1184–85 (10th Cir. 2011); *Marshall v. Chater*, 75

F.3d 1421, 1426–27 (10th Cir. 1996); *see also Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 494 n.3 (D. Kan. 1997).

The evidence presented to Judge Birzer establishes, and she properly determined, that the documents are not directly relevant to the original focus of the lawsuit — the layoff of some 200 workers in July and August of 2013. Rather, the documents were created as a part of an initiative by Spirit beginning in late 2012 to modify its performance improvement plan. Spirit's in-house counsel directed the company's HR department to consult with the Foultson, Siefkin law farm to give advice as to the new plan, which proceeded from October 2012 to March 2013.

At some point during March, 2014, an unknown person delivered the first cache of internal documents to the Wichita office of the Society of Professional Engineering Employees in Aerospace (SPEEA), the union which had represented the plaintiffs. SPEEA Midwest Director Bob Brewer promptly gave the package to Diane King, of King & Griersen, LLP, a Denver, Colorado law firm. King had traveled to Wichita to conduct a press conference to announce the filing of an EEOC complaint over the 2013 layoffs.

Brewer read the entire file, including the documents in the file which were explicitly marked as privileged or confidential. Some documents were not marked as privileged or confidential — but they were interspersed with many that were. In addition to explicit markings of privilege and confidentiality, the documents also repeatedly reference by name attorneys for Spirit and its outside counsel, Foulston Siefkin. Owing to frequent litigation between Spirit and SPEEA, Brewer and King knew the named attorneys worked

for Spirit.

Brewer testified that it would be "inappropriate" for a Spirit worker to take HR documents, and that confidential documents should not be shared outside the intended recipients. However, he forwarded the documents to King because he believed they "might be helpful" to her.

On top of the package was a pink sticky note addressed to "Bob." The note asserted the material "is from a good source." Only a photocopy of the sticky note has been produced by the plaintiffs, and this contains a redaction which strongly suggests the original note was signed, and the signature removed. Brewer asserts that he does not know what was on the original note, and that he has "no idea" where the original note is now. Brewer and King deny knowing the identity of the person who gave the documents to the union.

King reviewed the documents and saw that some were marked privileged. She returned to Denver, and asked an attorney in her firm to research applicable Kansas Ethics Rules and Tenth Circuit authority. This review was apparently limited, and did identify any of the relevant decisions.

King did seek a fuller explanation of her responsiblity. She did not hire outside counsel to review the documents. And, most importantly, she did not inform counsel for Spirit.

Instead, King gave the packet to Dianne Von Behren, a paralegal in her law firm. Von Behren, who has had no legal training in identifying privileged legal documents, was

4

given the task of physically pulling out from the packet those documents which were expressly marked as privileged. Von Behren separated pages which were otherwise connected. These papers marked privileged were then placed under seal. This had the effect of destroying the original order of the documents. This also allowed Denver counsel access to the remaining information for some two years as they prepared for litigation.

An anonymous source sent King another set of stolen Spirt documents, similar to the first, on May 14, 2014. King had Von Behren treat the second set of information the same way.

Plaintiff's Denver counsel did not attempt extended consultation on the issue until immediately before filing the July 11, 2016, complaint. The complaint filed by the plaintiffs includes references to the anonymously delivered Spirit information.

On July 7, 2016, a few days before the Complaint, King contacted Alec Rothrock, who suggested that King speak to Kansas attorneys Nick Badgerow and Mike Matula. He also attached a copy of *Burt Hill, Inc. v. Hassan*, No. 09-1285, 2010 U.S. Dist. LEXIS 7492 (W.D. Pa. Jan. 29, 2010). *Burt Hill*, discussed extensively by Judge Birzer in her Order, extends the ethical rule which requires prompt notification of opposing counsel in the event of an *inadvertent* disclosure of confidential information to cases in which the disclosure has occurred through the intentional wrongful action of a third party.

After the Complaint, on July 11, 2016, King contacted Terry Mann, of the Martin, Pringle law firm in Wichita, Kansas. Mann responded that KRPC 4.4 provided no direct guidance, since it explicitly dealt with inadvertent disclosures, and suggested the

documents be presented to the court for in camera review.

At about the same time, King consulted Kansas Deputy Disciplinary Administrator Kimber Knoll, who told her that she should get the matter "in front of the judge as quickly as you can," but also that she should inform Spirit immediately.

Nevertheless, King still did not disclose possession of the materials to Spirit in July 2016. Rather, the parties consulted about discovery in August, and scheduled a conference for September 28, followed by a status conference on October 19.

On September 21, plaintiffs served written discovery requests, which included direct quotations to some of the challenged documents.

Finally, on October 12, 2016, as the parties consulted for the upcoming status conference, plaintiffs informed Spirit of the existence of the documents. Spirit demanded the return of the documents. King indicated that she planned to submit some, but not all of the documents, for in camera review. Two days later, following consultation with their local counsel, the plaintiffs supplied a copy of the documents to Spirit. Spirit promptly filed its Motion for Protective Order and Sanctions (Dkt. 172).

In her extensive and carefully reasoned Order, Judge Birzer rendered the factual findings summarized here, and concluded that an attorney who obtains privileged and confidential information through the intentional actions of a third party has a duty to disclose this to opposing counsel, and promptly seek judicial review of the materials. She determined that plaintiff's Denver counsel violated this obligation, but determined that the sanction should not include dismissal of the case or disqualification of counsel. She

imposed limited sanctions, requiring the plaintiffs to return the documents and precluded their use as a basis for discovery, and provided that Spirit should recover the costs of its attorney fees in obtaining the Order. She rejected Spirit's request for broader sanctions which would bar the use of any evidence "related to" the documents delivered to Brewer and King in 2014.

In reaching this conclusion, Judge Birzer agreed that there was no explicit black letter ethical rule governing the receipt of stolen privileged information. KRPC 4.4(b) creates a duty of prompt notification to opposing counsel in the event of the *inadvertent* sending of electronic information. Recent commentary on the federal version of Rule 4.4, ABA Formal Opinion 06-440, has acknowledged that the rule by its express terms only addresses inadvertent disclosures. Still, the same authority recognized that the absence of any rule for intentional disclosures in the text of Rule 4.4 should not be taken as a license for nondisclosure. The commentary warned that attorneys must also consult the general ethical obligations of the profession.

As Judge Birzer noted, recent advisory opinions by the Kansas Office of the Disciplinary Administrator do suggest that Kansas ethics rules require prompt notification in the event of a deliberate disclosure of confidential information by a third party.

Moreover, case authority from other jurisdictions supports the obligation to promptly disclose. *See Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1316 (D. Utah 2016) (finding it was "inappropriate for the plaintiff and his lawyers to unilaterally decide whether the documents were proprietary, confidential, or privileged"); *Chamberlain Grp.,*

*Inc. v. Lear Corp.*, 270 F.R.D. 392 (N.D. Ill. 2010) ("If anything, the duty to disclose should be stricter when a party obtains the documents outside legitimate discovery procedures"); *Merits Incentives, LLC v. Eighth Judicial Dist. Court of State, ex rel. Cty. of Clark*, 262 P.3d 720, 724 (Nev. 2011) (no sanctions where recipient promptly notified opposing counsel); *Burt Hill, Inc. v. Hassan*, No. CIV.A. 09-1285, 2010 WL 419433 (W.D. Pa. Jan. 29, 2010); *In re Eisenstein*, 485 S.W.3d 759, 762 (Mo. 2016) (*en banc*) (granting sanctions where counsel did not promptly reveal receipt of personal information). *Cf. Chesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506 (W.D. Wis. 2011) (refusing sanctions in case where it was unclear how long the attorneys kept the challenged information); *Brado v. Vocera Commc'ns, Inc.*, 14 F. Supp. 3d 1316 (N.D. Cal. 2014) (no sanctions where opposing counsel promptly notified).

Judge Birzer's determination did not rest alone on this assessment of the case law, but also on the inherent powers of the court to sanction misconduct, powers which are not limited to any specific rule or statute. (Dkt. 233, at 23-24). She also noted this court's adoption by scheduling orders of the KBA's Pillars of Professionalism, with its general requirement for good faith, fair dealing and professionalism.

The plaintiffs now offer multiple objections to Judge Birzer's order. The least substantial of these is the argument that Denver counsel's illicit retention use of the privileged and confidential Spirit documents violated no ethical norm.

The magistrate judge correctly determined that, while Rule 4.4 expressly governs only inadvertent disclosures, this is not carte blanche to conceal the receipt of intentionally purloined documents. Commentary to the equivalent federal rule warns expressly, with

respect to privileged information obtained through the intentional acts of third parties, attorneys must consult the general professional standards of the relevant jurisdiction. Recent opinions by the Kansas Disciplinary Adminstrator's Office[2] strongly indicate that illicit retention is unethical.

Judge Birzer concluded the duty to disclose applied to all the relevant documents, whether privileged or merely confidential. The decision that plaintiffs' Denver counsel violated this obligation under the facts of the case is not clearly erroneous or contrary to law. The facts establish that Denver counsel knew almost immediately that the documents included privileged and confidential information, conducted only a cursory search of their ethical obligations in 2014, arranged for the documents to be physically sorted by a paralegal in a manner which destroyed their original order and integrity, held the documents for two years, arrogated to themselves the role of gatekeeper role of determining what documents were privileged, using some of the documents to prepare the 2016 complaint, sought outside ethical advice only after local Kansas counsel learned of the documents and advised obtaining such advice, and then continued to remain silent about the documents for three months after this advice alerted counsel to *Burt Hill*, which granted sanctions for comparable behavior, and which advised that opposing counsel should be notified and the matter presented to the court as soon as possible.

---

[2] Kansas Office of the Disciplinary Administrator, "Kansas Ethics Refresher No. 49," Email to KSEthics listserv, a service of the Washburn University School of Law (May 10, 2017, at 10:43 a.m.) (citing *In re Eisenstein*, 485 S.W.3d 759, 762 (Mo. 2016) (*en banc*).

Judge Birzer did not unilaterally impose an ethical obligation of her own making. The case law cited earlier recognizes that, if an attorney receives the privileged information of an opposing party through the intentional acts of a third party, he or she must immediately notify opposing counsel. The Kansas Supreme Court and this court have expressly adopted the Pillars of Professionalism, which require attorneys "to perform their work professionally by behaving in a manner that reflects the best legal traditions, with civility, courtesy, and consideration." The illicit retention and use of privileged and confidentially information, however aquired, violates this duty.

Plaintiffs have cited not a single case or authority which would condone the illicit retention of such documents, nor suggested any valid reason for such a license. The court agrees with Judge Birzer's observation that counsel's ethical obligations are not confined to inadvertent disclosures, and that it is

> frankly ... nonsensical to apply a separate and lesser standard to intentionally-disclosed documents. In fact, given the documents' dubious origins, protections applied to Defendants' proprietary or privileged-marked information should be at least equal, if not heightened, when the disclosure is clearly unauthorized.

Dkt. 233, at 36.

Next, plaintiffs argue that Judge Birzer could not impose sanctions in the absence of an express determination that counsel acted in bad faith. In particular, plaintiffs cite *Sun River Energy v. Nelson*, 800, F.3d 1219, 1227-28 (10th Cir. 2015) for the proposition that a court may issue sanctions pursuant to its inherent power only based upon a finding of bad faith. However, it is unclear whether *Sun River* establishes such a requirement in all

instances of the court's use of its inherent authority. *Sun River* relied on the Supreme Court's decision in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), in which the Court addressed the imposition of attorney fees as an exception to the traditional American rule against the award of fees to a prevailing party.

The Court in *Chambers* indicated that the inherent power includes the ability to issue punitive sanctions "when a party has '"has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."'" *Id.* at 46 (quoting *Alyeska Pipeline Serv. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (quoting *F.D. Rich Co. v. United States*, 417 U.S. 116, 129 (1974)). At the same time, the Court also observed that "the inherent power extends to a full range of litigation abuses." *Id.* And the Court has otherwise agreed that under *Chambers*, the inherent authority "includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (10th Cir. 2017) (quoting *Chambers* 501 U.S. at 44–45). The inherent power of the court serves to broadly "vindicate[] judicial authority without resort to the more drastic sanctions available for contempt of court and makes the prevailing party whole for expenses caused by his opponent's obstinacy." *Hutto v. Finney*, 437 U.S. 678, 691 n. 14 (1978).

However, even assuming that use of the inherent power does require a demonstration of an appropriately culpable mental state, plaintiffs err in complaining that Judge Birzer's opinion failed to make a determination — even if it did not use the magic words that Denver counsel acted in "bad faith."

Judge Birzer decided to impose sanctions after explicitly observing that a court may

impose sanctions pursuant to its inherent authority "when express laws . . . do not reach the entirety of a litigant's bad-faith conduct." (Dkt. 233, at 41 n. 141) (quoting *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1258 (10th Cir. 2015)). She observed that the Spirit material was produced to Denver counsel in "highly suspicious" circumstances. *Id.* at 35. Denver counsel "sidestep[ped] the olderly discovery process." *Id.* at 38. Under the circumstances, it was "clear" that the text of inadvertent disclosure rules did not limit counsel's duties as to privileged documents. *Id.* at 37.

The magistrate judge was "troubled by counsel's failure to immediately notify opposing counsel," as well as by "the considerable length of retention." *Id.* at 39. In retaining the documents, counsel ignored "the majority of caselaw" condemning such behavior, and failed to seek outside advice for two years. *Id.* at 40. Counsel retained the documents even though she "knew both that the documents related to representation of [Spirit's] clients, and knew—from the markings on the documents themselves and from their prior dealings with Spirit—that the documents were not intended for disclosure outside [its] business." *Id.* at 40-41. Counsel's actions violated "obligations of decency, fundamental fairness, and frankly the golden rule." *Id.* The magistrate judge, acknowledged, but rejected, the various arguments presented by plaintiffs that Denver counsel acted promptly and ethically, such claims were "baffl[ing]." *Id.* at 40. Instead, rather than fulfilling its ethical obligation, Denver counsel "'l[aid] in wait' with the documents." *Id.* at 37. These findings are tantamount to a finding of bad faith, and are supported in the record.

Moreover, even a narrow view of the court's inherent power to sanction conduct does not limit the power to "bad faith." A court may sanction conduct which is in bad faith — or, as noted above, conduct which is vexatious, wanton or oppressive. *Chambers*, 501 U.S. at 46. "Bad faith implies that a litigant intentionally took a position he subjectively knew was unfounded." *Gate Guard Serv. v. Perez*, 792 F.3d 554, n. 4 (5th Cir. 2015) (citing Bryan A. Garner, Black's Law Dictionary 166 (10th ed.2014)). In contrast, vexation or wantonness may arise from reckless conduct in disregard of the rights of another. *Id.* The magistrate judge's factual findings here fully support the determination that Denver counsel's actions were at least wanton or vexatious, and thus her decision to award sanctions was not contrary to law.

Alternatively, the award of sanctions is also appropriate under Rule 37, which contains no requirement of a culpable mental state. *Sun River*, 880 F.3d at 1227-28.[3] As noted earlier, a magistrate judge's order will be affirmed if there are any legal grounds for the award, so long as the evidentiary record supports such a result. *See Shroff*, 604 F.3d at 1187 n. 4.

The secret retention and use of the Spirit documents was not substantially justified so as to excuse sanctions under Rule 37. As noted by Judge Birzer, Denver counsel knew the documents included privileged and confidential materials, had the documents

---

[3] While Judge Birzer granted defendant's motion pursuant to the court's inherent power, she also stressed that "this Court could find similarly [that Rule 37 governed prelitigation conduct], but given its inherent powers, the Court finds it unnecessary to do so. (Dkt. 233, at 50).

physically separated by a paralegal in a procedure which destroyed the integrity of the original documents, avoided seeking outside advice for two years until immediately before the filing of the complaint, and continued to conceal and use the documents for months after being warned by outside counsel of the need for immediate disclosure. Plaintiffs' Denver counsel have failed to show any substantial justification for this. Denver counsel assumed for themselves the role of gatekeeper of confidentiality and privilege of the purloined Spirit documents, a role which properly belongs to the court. *See Xyngular*, 200 F.Supp.3d at 1320 (stressing "the parties' right to a neutral forum for resolving discovery disputes").

Although plaintiffs suggest that concealment was appropriate to prevent Spirit's HR department from destroying the documents, plaintiffs failed to offer any direct evidence to support such an inference of misconduct by Spirit. Moreover, the duty created by the ethical rules require notification of Spirit's *counsel*, and plaintiffs have failed to offer even a suggestion that the attorneys for Spirit would be involved in such behavior. Hypothetical and unfounded speculation about misconduct by Spirit provides no justification for the fully proven misconduct by plaintiffs' Denver counsel.

Plaintiffs also argue that the court cannot award sanctions for prelitigation conduct, citing *Towerridge, Inc. v. T.A.O., Inc.*, 11 F.3d 758, 765 (10th Cir. 1997). In *Towerridge*, the district court had awarded attorney fees based upon bad faith actions which occurred prior to litigation, and the Tenth Circuit reversed the award as contrary to the general American rule against attorney fee-shifting. In doing so, the court distinguished between bad faith

actions in procedurally advancing or defending a claim on the one hand, and "bad faith in the acts giving rise to the substantive claim" on the other. *Id.* at 768. In the case before it, "[e]ven assuming all such actions occurred and were in bad faith, the bad faith was not abusive of the judicial process; any bad faith lay solely in T.A.O.'s prelitigation acts which gave rise to Towerridge's substantive claim." *Id.*

Here, the award of sanctions pursuant to the court's inherent authority was not based solely on prelitigation conduct. As Judge Birzer explicitly noted, Denver counsel's misconduct originated before the complaint was filed, but also continued for several months afterward. (Dkt. 233, at 52). More importantly, the sanctions are not imposed based upon bad faith acts by the plaintiffs which give rise to any substantive claim, but misconduct by Denver counsel in relation to privileged and confidential documents, some of which were incorporated into their complaint. Such conduct was abusive of the judicial process, and is subject to sanction by the court.

Next, the plaintiffs argue Judge Birzer should not have awarded sanctions because Denver counsel was obliged to investigate their clients' claims and because of the need to protect whistleblowers. The court denies the objection.

Under the controlling standard of review, arguments which were not presented to the magistrate judge are waived. Further, the court does not review the magistrate judge's decision *de novo*, or displace her careful weighing of interests with its own. The order of the magistrate judge will be affirmed as long as it is not contrary to controlling law. Here, the decision was consistent with governing law, and the court will not substitute its assessment

of the relevant interest for that of Judge Birzer.

And in any event, the concerns cited by plaintiffs would not warrant a reversal of the protective order. Plaintiffs cite authorities which establish generally the obligation to collect information relating to their client's claims. But plaintiffs have completely failed to show that, in this action, the retention and use of the purloined Spirit files was in any way essential to their investigation of the plaintiffs' claims. To the contrary, counsel has otherwise stressed the substantial nature of their independent inquiry. And, as noted earlier, plaintiffs have failed to provide any authority suggesting that counsel's general professional obligation to investigate a client's claims somehow permits counsel to secretly retain stolen privileged and confidential information, in violation of a specific ethical duty to give prompt notice to opposing counsel, and to resolve disputes through the courts.

The plaintiffs' concern for "whistleblowers" also provides no basis for reversing the award of sanctions. The person who took Spirit's information was not a whistleblower. He or she did not deliver the information to the government or to the media, instead arranging for it to be delivered privately and secretly to counsel, for use in private civil litigation. And even if, by some stretch of the imagination, the author of the pink note were considered a "whistleblower," the award of sanctions here does nothing to reveal his or her identity. As noted earlier, through the suspicious redaction of the pink sticky note, the "whistleblower" is and remains anonymous. The order of Judge Birzer imposing limited sanctions — requiring a return of the documents and compensatory attorney fees — does nothing to deter true whistleblowers.

Because the order of the magistrate judge requiring the return of the documents was not clearly erroneous or contrary to law, the objections are overruled. Accordingly, the confidentiality of individual portions of the Spirit document collections is moot, and the court need not address the issue.

Finally, the court notes plaintiffs' request to submit additional briefing on the issue. Local Rule 72.1.4 expressly provides that "[t]he procedure for filing objections to the recommendation of a magistrate judge on a dispositive or other matter follows Fed.R.Civ.P. 72(b)." Rule 72(b), in turn, authorizes only two pleadings for the resolution of a dispute as to an order by a magistrate judge: the initial objection and a corresponding response. The rule "does not countenance a reply to a response to a party's objections." *Aurzadniczek v. Humana Health Plan*, 2016 WL 1266972, at *1 n. 2 (D. Col. April 1, 2016).

Absent exceptional circumstances, leave for a reply is typically denied. *See Bozsik v. Bagley*, 2011 WL 4629023, *11 (N.D. Ohio Sept. 30, 2011) (denying leave to file a reply in support of objections to magistrate judge's order, where the arguments "advanced are, at their core, the same arguments Petitioner has repeatedly tried (unsuccessfully) to make"); *In re Retek, Inc. Sec. Litig'n*, 2007 WL 2572034, at *4 n. 2 (D. Minn. Aug. 31, 2007) (denying leave to reply where objector to magistrate judge's order did not demonstrate "extenuating circumstance justifying the need for additional briefing, and the briefing previously submitted is sufficient to assess the merits of the appeal").

Here, the plaintiff's request demonstrates no extraordinary circumstances justifying a reply, merely indicating a desire to offer additional rejoinder to Spirit's arguments in its

response. Rule 72's express limitation on the extent of pleadings reflects a considered judgment that the value of additional briefing of an issue diminishes over time, especially where the matter has been fully briefed to the magistrate judge. This judgment is amply vindicated in the present case, where the issues surrounding Spirit's motion for protective order have been exhaustively addressed in voluminous pleadings and rulings (Dkt. 173, 181, 196, 233, 235, 247), as well oral argument presented to the magistrate judge (Dkt. 241). Accordingly, the court declines leave for the submission of a reply, although the court further notes that it has considered the proposed reply, and finds nothing therein which would support a determination that the order of Judge Birzer was clearly erroneous or contrary to law.

IT IS ACCORDINGLY ORDERED this 6th day of September, 2017, that the Plaintiffs' Objections and Motion for Leave (Dkt. 235, 252) are hereby denied.


＿＿＿s/ J. Thomas Marten＿＿＿＿
J. THOMAS MARTEN, JUDGE