## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DONETTA RAYMOND, et al., | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| vs. | )   Case No. 16-1282-JTM-GEB |
| | ) |
| SPIRIT AEROSYSTEMS HOLDINGS, INC., and | ) |
| SPIRIT AEROSYSTEMS, INC., | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion of non-party Society of Professional Engineering Employees in Aerospace, IFPTE Local 2001 ("SPEEA") to Quash Defendants' Second Subpoena (**ECF No. 318**). On December 14, 2017, the Court convened an in-person hearing to address the pending motion. Plaintiffs appeared through counsel, Randall Rathbun, with counsel Diane King and Kimberly Jones present by telephone. Defendants appeared through counsel, Boyd Byers and Teresa Shulda. Movant SPEEA appeared through counsel, Jeanette Fedele and Thomas Hammond. After consideration of both the arguments of counsel and the parties' briefing, the Court **GRANTED** SPEEA's Motion (ECF No. 318) at hearing. The previously-announced ruling of the Court is now memorialized below.

## I.    Background[1]

### A.    Nature of Suit

The significant factual history of this case has been discussed in detail in previous orders (*see* ECF Nos. 202, 233) and will not be repeated in full here.  Generally, in July and August 2013, defendant Spirit AeroSystems ("Spirit")[2] conducted a "reduction in force" ("RIF") which terminated the employment of the named Plaintiffs and more than two hundred other workers.  The workers were all members of SPEEA, a labor union. Plaintiffs claim the RIF eliminated a disproportionate number of Spirit's older employees.  Spirit alleges Plaintiffs and others like them were discharged, and not considered for rehire, for lawful reasons—primarily their poor performance.  Plaintiffs filed this collective action in July 2016, claiming Spirit wrongfully terminated their employment and/or later failed to consider them for new job openings because of their age and, in some cases, the older employees' (or family members') medical conditions and related medical expenses.  In addition to the collective action claims under the Age Discrimination in Employment Act[3] ("ADEA"), some Plaintiffs also assert individual ADEA claims, while other Plaintiffs claim their termination violated the Americans with Disabilities Act[4] ("ADA") and/or the Family and Medical Leave Act[5] ("FMLA").

---

[1] Unless specifically indicated, the facts recited are drawn from the parties' pleadings (Pls.' Compl., ECF No. 1; Defs.' Answer, ECF No. 27) and the briefing regarding the instant motion (ECF Nos. 318, 319, 324).

[2] Throughout this Order, the use of "Spirit" will refer to defendant Spirit AeroSystems, as well as its parent company, defendant Spirit AeroSystems Holdings, Inc.

[3] 29 U.S.C. § 621 et seq.

[4] 42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008.

[5] 29 U.S.C. § 2601 et seq.

**B.    Procedural Posture**

The unique posture of this case was also addressed in prior decisions (*see, e.g.*, ECF No. 202) and will not be repeated to the extent addressed therein.    Highly summarized, this case is progressing on a phased discovery plan, and the initial phase—focused on the validity of releases signed by a majority of Plaintiffs at termination—is closing soon.    After the first phase issues are resolved through dispositive motions, the case will progress to a second phase of discovery to focus on Plaintiffs' wrongful termination claims.

**C.    Discovery Disputes**

This case has been fraught with a number of disputes, as evidenced by the considerable docket and length of time it has taken to reach the end of Phase I discovery. Bearing some relevance to the instant motion were two more recent discovery issues. One dispute occurred in September 2017, when during a conference on Spirit's request for extension of time to compel discovery, Spirit revealed to the Court that its initial subpoena to non-party SPEEA had gone unanswered for several months despite communications between Spirit and SPEEA counsel (Order, ECF No. 264).    This Court entered an Order to Show Cause (ECF No. 263), and SPEEA responded soon after, providing Spirit with a number of documents related to its investigations and communications surrounding the July/August 2013 lay-offs (*see* ECF No. 266).

Most recently, on October 12, 2017, the Court held a telephone discovery conference with the parties to work through both sides' concerns regarding the scope of

Phase I discovery (*see* Order, ECF No. 273).   Essentially, Plaintiffs sought discovery

from Spirit regarding what Spirit called performance terminations of other non-party

employees in March 2013.    Plaintiffs contend the March 2013 terminations and

July/August 2013 lay-offs were part of a single, but "phased" mass termination plan by

Spirit.   Spirit objected to this discovery as irrelevant and because it related to the

misappropriated documents discussed in this Court's June 30, 2017 sanction order (ECF

No. 233).   The Court found that the information sought by Plaintiffs was at least

minimally relevant to Phase I discovery; was discovered independently from the

misappropriated documents; and permitted Plaintiffs to discover the information (Order,

ECF No. 273).

  During the October 12 conference, Spirit also sought multiple documents from

Plaintiffs.   Spirit's requests included information and various communications between

Plaintiffs and SPEEA, and between the Plaintiffs themselves, regarding not only the

waivers at issue in Phase I, but also related to the terminations as a whole.   Plaintiffs

objected, arguing they should produce only communications and information regarding

the waivers, but not all communication related to the merits of the terminations.   They

contended the merits concerns were only a Phase II issue and therefore outside the scope

of Phase I discovery.

  Plaintiffs did not argue the information lacked relevance to Phase II; only that it

was outside the scope of Phase I.   Because the information had some minimal relevance

to Phase I, and would almost certainly be relevant to Phase II, Plaintiffs were ordered to

produce it.   (Order, ECF No. 273).

## II.    SPEEA's Motion to Quash (ECF No. 318)

Following the October 2017 discovery conference, on November 6, 2017, Spirit issued a second subpoena to SPEEA.  This second subpoena sought the same types of investigative documents and communications as Spirit's first subpoena to SPEEA, but focused on the March 2013 terminations rather than the July/August lay-offs.  SPEEA then filed a motion to quash the subpoena, which the Court now considers.

### A.    Duty to Confer

As a threshold matter, the Court first considers whether the parties have sufficiently conferred regarding this discovery motion, as generally required by D. Kan. Rule 37.2 and Fed. R. Civ. P. 37(a)(1).  In the briefing, it appears counsel for SPEEA and Spirit only communicated with one another through email prior to SPEEA's motion, which the local rule specifically decries as not true "conference."  Despite this apparent deficiency, during oral argument, counsel revealed they later attempted to resolve their differences through more than one telephone call after SPEEA filed its motion.  Although the Court would expect such conference to occur *prior* to the filing of a motion—as required by the rules—the Court was encouraged by the communications at hearing and is at least minimally satisfied counsel have adequately conferred as required.

### B.    Arguments of the Parties

SPEEA argues the subpoena must be quashed because it imposes an undue burden on SPEEA, a non-party.  It claims the information Spirit seeks is not relevant to the issue of the validity of the waivers; some information sought is in Spirit or Plaintiffs' own

possession; the requests are overbroad; they lack temporal limitation; the subpoena fails to describe the information sought with particularity; and it would be unduly burdensome for SPEEA to respond.

Spirit contends because Plaintiffs were permitted to conduct discovery into the March 2013 terminations, it should likewise be allowed to conduct discovery into SPEEA's investigation and communications regarding the same terminations. Spirit also argues the information from SPEEA is necessary for it to fairly defend against Plaintiffs' claims that the waivers are invalid, based in part on the idea that the March and July/August 2013 terminations were part of a common plan.[6]

### C.    Legal Standard

Under Fed. R. Civ. P. Rule 45(d)(3), "the court for the district where compliance is required must quash or modify a subpoena that" meets various criteria, including one which subjects the responding party (or non-party) to undue burden. When considering a motion to quash, non-parties subject to a Rule 45 subpoena are generally provided heightened protection from discovery abuse.[7] But determining "whether a subpoena imposes an undue burden . . . is a case-specific inquiry requiring consideration of 'such factors as relevance, the need of the party for the documents, the breadth of the document

---

[6] Plaintiffs did not present a position on the instant motion. At hearing, though, Plaintiffs presented at least one of their invalidity arguments. A part of their invalidity argument is based on the theory that Spirit was required by law to notify all employees subject to the same termination program of the waiver. Because Plaintiffs believe the March and July/August terminations were a part of a common plan, they claim Spirit should have notified all employees terminated during both time frames in order for the waivers to be valid.

[7] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-MC-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV-JPO, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"[8]  Courts must balance the need for discovery against the burden imposed on the person ordered to produce documents.[9]

Although Rule 45 does not specifically include relevance or overbreadth as bases to quash a subpoena, "this court has long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34."[10]  Rule 26(b)(1) permits discovery of "any non-privileged matter that is relevant to any party's claim or defense."  Additionally, the scope of discovery must be "proportional 'to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'"[11]  "A subpoena that seeks irrelevant, overly broad, or duplicative discovery causes undue burden, and the trial court may quash it on those bases."[12]

---

[8] *Speed Trac Techs.,* No. 08-212-KHV-JPO, 2008 WL 2309011, at *2 (internal citations omitted).

[9] *Id.*

[10] *Martinelli v. Petland, Inc.,* No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted); *Martin v. Grp. 1 Realty, Inc.,* No. 12-2214-EFM-DJW, 2013 WL 3322318, at *2 (D. Kan. July 1, 2013).

[11] *Gilbert v. Rare Moon Media, LLC,* No. 15-MC-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (citing Fed. R. Civ. P. 26(b)).

[12] *Rare Moon,* 2016 WL 141635, at *4 (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* No. 05-2164-MLB-DWB, 2007 WL 2122437, at *5 (D. Kan. July 20, 2007)).

**D.    Analysis**

To determine whether Spirit's subpoena subjects SPEEA to an undue burden, the Court reviews the factors described above. As an initial concern, after review of the parties' briefing and oral arguments, the Court finds relevance to be particularly troubling. It appears the information sought by Spirit would only demonstrate SPEEA's reactions to the March 2013 terminations, not whether or not the terminations were actually the result of Spirit's own single, or separate, processes.

In addition to the questionable relevance of the information, the Court is not convinced of Spirit's true need for the documents, particularly at this late date. For example, any communications between Spirit and SPEEA (the topic of request nos. 11 and 12 in the subpoena) should be in Spirit's own possession. And, it seems Spirit should have the information it needs to respond to the argument that it had some large-scale termination plan—after all, Spirit possesses its own information regarding its own termination and/or lay-off events.

The Court is also troubled by the overall breadth of Spirit's requests. As discussed during the hearing, in many of the subpoena's requests, Spirit seeks "all documents related to" multiple types of communications, without a sufficient narrowing of the specific types of documents it seeks. And, although the requests are confined to items related to the March 2013 terminations, there are no time frames restricting SPEEA's actual production, so it is unclear whether Spirit seeks all documents for the past four plus years, or only information created in 2013.

8

Related to the overbreadth concerns is the lack of particularity with which the requested documents are described.  In addition to the breadth of the requests, the subpoena also seeks, for example, communications between SPEEA and those non-party employees terminated in March 2013, as well as communications between SPEEA and plaintiff's counsel—with whom SPEEA indicates they possess a common interest agreement.  Although the Court feels it unnecessary to delve into the privilege issues considering the weight of the undue burden factors, this is illustrative of the lack of particularity within the subpoena.

The Court must consider the overall burden imposed on the responding party—or, in this case, even more so with respect to a non-party.  SPEEA reports it reviewed more than 30,000 pages of documents and spent over 400 hours preparing its responses to Spirit's first subpoena, which was substantially similar to the instant requests.  Even more important is the Court's concern about the confidentiality of communications between SPEEA and the employees it represents—especially those not parties to this case. The Court agrees with the policy argument submitted by SPEEA:   employees tend to rely on the union for assistance, and requiring the union to open its files to the employer "would be inconsistent with and subversive of the very essence of collective bargaining and the quasi-fiduciary relationship between a union and its members."[13]   Disclosing employee communications with the union could have a chilling effect on future communications.

---

[13] SPEEA's Mem. Supp., ECF No. 319 at 12 (citing *Berbiglia, Inc.*, 233 NLRB 1476, 1495 (1977)).

Another factor which bears on this decision is the timing of Spirit's request. At the time of hearing, Phase I discovery was to close in six days. The parties were previously informed during the October 12, 2017 conference that no further extensions of the Phase I deadlines would be permitted. This case is already eighteen months old, and three modifications to the Phase I scheduling order have previously occurred.[14] Permitting additional—and what this Court views as considerably broad—discovery will only serve to frustrate the already-lagging schedule.

### E.    Conclusion

Therefore, after careful review of the above factors, the Court finds Spirit's second subpoena to SPEEA to be unduly burdensome. SPEEA's motion to quash is therefore granted. Although SPEEA also seeks sanctions against Spirit, in the Court's discretion, no sanctions will be imposed. It does not appear that Spirit has acted carelessly or in bad faith when issuing its second subpoena to SPEEA, and Spirit propounded good-faith arguments about the relevance of the information and its perceived need.

The schedule remains as previously ordered. Phase I discovery closed on December 20, 2017. Any dispositive motions must be filed by January 31, 2018.

**IT IS THEREFORE ORDERED** that movant SPEEA's Motion to Quash (**ECF No. 318**) is **GRANTED**.

---

[14] *See* Phase I Scheduling Order (ECF No. 153, Oct. 20, 2016);

**IT IS SO ORDERED**.

Dated this 21st day of December, 2017 at Wichita, Kansas.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge
