IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONETTA RAYMOND, *et al.*,

        Plaintiffs,

v.                                      Case No. 16-1282-JWB

SPIRIT AEROSYSTEMS HOLDINGS, INC.,
and SPIRIT AEROSYSTEMS, INC.,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Spirit's[1] motion for partial judgment on the pleadings. (Doc. 409.) The motion is fully briefed and is ripe for decision. (Docs. 410, 417, 422.) For the reasons stated herein, Spirit's motion is GRANTED. Plaintiffs' motion for a hearing on the foregoing motion (Doc. 424) is DENIED, as the court determines that oral argument would not assist in deciding the issues presented.

**I. Facts**

Plaintiffs are former Spirit employees in Wichita whose employment was terminated in a July 2013 reduction-in-force (RIF). Plaintiff's fifth claim for relief, based on the Age Discrimination in Employment Act (ADEA), alleges that after July 2013, "Spirit implemented a policy, procedure, and/or practice of rejecting applications for open positions from individuals terminated in the July 2013 RIF." (Doc. 1 at 80.) Plaintiffs allege this "failure and refusal to hire former employees terminated in the July 2013 RIF had a significant adverse impact on the work

---

[1] Spirit Aerosystems Holdings, Inc. is a holding company that owns Spirit Aerosystems, Inc. For purpose of this opinion, Defendants are collectively referred to as "Spirit."

opportunities of former Spirit employees age 40 or above," including the Applicant Plaintiffs and the Deterred Applicant Plaintiffs,[2] and was not based on "reasonable factors other than age," such that it violated the ADEA. (*Id.*)

**II. Motion to Dismiss**

Plaintiffs' fifth claim for relief is based on 29 U.S.C. § 623(a)(2), which is part of the ADEA's prohibition on age discrimination. It states as follows:

**(a) Employer practices**

It shall be unlawful for an employer--

**(1)** to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

**(2)** to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

**(3)** reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C.A. § 623(a) (West).[3]

In *Smith v. City of Jackson, Miss.*, the Supreme Court held that subsection (a)(2) permits claims of disparate impact. *Smith*, 544 U.S. 228, 232 (2005). At the same time, the Court indicated that subsection (a)(1) only permits claims of disparate treatment.[4] *Id.* at 236, n.6 (plurality opinion); *Texas Dept. of Hous. and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507,

---

[2] The Applicant Plaintiffs are nineteen individuals who allegedly applied for but were not hired for one or more open Spirit positions after their termination in July 2013. The Deterred Applicant Plaintiffs are four individuals terminated in the RIF who allegedly were "discouraged and deterred from applying" for such positions due to Spirit's discriminatory policies. (Doc. 1 at 79.)

[3] Notwithstanding the above prohibitions, it is not unlawful for an employer to take any action otherwise prohibited under subsection (a) "where the differentiation is based on reasonable factors other than age…." *Id.*, § 623(f).

[4] Disparate treatment occurs when an employer treats some people less favorably than others because of their age or other protected characteristic, and it requires proof that the protected trait actually motivated the employer's decisions. *Raytheon v. Hernandez*, 540 U.S. 44, 52 (2003) (citations omitted.) Disparate impact, by contrast, involves employment practices "that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." *Id.*

2

2545 (2015) (Alito, J., dissenting) (noting all of the Justices agreed in *Smith* that § 632(a)(1) does not authorize disparate-impact claims.) As explained in *Smith*, the difference arises because the focus of (a)(1) is on an employer's actions with respect to "a targeted individual," but in (a)(2) there is "an incongruity between the employer's actions – which are focused on his employees generally – and the individual employee who adversely suffers because of those actions." *Smith*, 544 U.S. at 236, n.6. Thus, even absent an intent to discriminate, "an employer who classifies his employees without respect to age may still be liable [under (a)(2)] … if such classification adversely affects the employee because of that employee's age – the very definition of disparate impact." *Id.* Although *Smith* spoke about subsection (a)(2) entirely in terms of the effect of a classification on "employees," it did not explicitly address whether this subsection can be applied to non-employee job applicants who claim they were not hired because of the disparate impact of a facially neutral employment policy.

Spirit moves to dismiss Plaintiff's fifth claim for relief pursuant to Fed. R. Civ. P. 12(c), arguing the ADEA does not authorize failure-to-hire claims under a disparate impact theory. (Doc. 410 at 1.) Claims of discriminatory failure-to-hire must be brought under § 623(a)(1), Spirit argues, which does not permit a disparate impact theory. Plaintiffs' fifth claim for relief is based on § 623(a)(2), which allows disparate impact claims, but Spirit argues this subsection only applies to current employees, not to outside job applicants. (*Id.* at 3.)

In response, Plaintiffs raise three basic arguments in support of their position that they have stated a claim under § 623(a)(2). Fundamentally, Plaintiffs argue that subsection (a)(2) always applies to failure-to-hire claims by outside job applicants. (Doc. 417 at 6-25.) Alternatively, Plaintiffs argue that their status as former employees brings them within the purview of subsection (a)(2) because that provision speaks in terms of "employee" and "employees," and because prior

Supreme Court precedent in the Title VII context teaches that the term "employee" can encompass both current employees and former employees. (*Id.* at 4-6.) Finally, relying on similar logic, Plaintiffs argue they fall within the scope of subsection (a)(2) because they "suffer from the disparate impact of policies Spirit developed and set into motion *while Plaintiffs were still employees.*" (*Id.* at 2) (italics in original.) As to this particular theory, Plaintiffs contend Spirit violated subsection (a)(2) by designating older workers for the RIF and developing a policy of excluding such workers from consideration for rehire. (*Id.* at 3.) Plaintiffs argue this fact distinguishes their claims from the cases cited by Spirit, which interpreted § 623(a)(2) to exclude claims by outside job applicants.

### III. Standards for Motion to Dismiss

Rule 12(c) permits a motion to dismiss on the pleadings after the pleadings are closed. The standards applicable to such a motion are the same as those governing Rule 12(b)(6) motions. *See Morris v. City of Colorado Springs*, 666 F.3d 654, 660 (10th Cir. 2012). In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to the plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

### IV. Analysis

A. Whether § 623(a)(2) permits a claim based on a failure to hire outside applicants.
Plaintiffs argue that the language in § 623(a)(2), specifically the prohibition of "depriv[ing] any

individual of employment opportunities," provides a basis for their disparate impact claim. Two en banc circuit court decisions have addressed whether subsection (a)(2) permits disparate impact claims based on an employer's failure to hire outside (*i.e.* not current employee) job applicants.[5] *See Kleber v. Carefusion Corp.,* 914 F.3d 480 (7th Cir. 2019) (en banc), *petition for cert. docketed,* No. 18-1346 (U.S. Apr. 26, 2019); *Villarreal v. R.J. Reynolds Tobacco Co.,* 839 F.3d 958 (11th Cir. 2016) (en banc). A majority in each case concluded that subsection (a)(2) does not permit such claims.

The arguments concerning construction of § 623(a)(2) were exhaustively discussed in the *Kleber* and *Villarreal en banc* opinions. After reviewing those decisions, and the parties' arguments in this case, the court agrees with the majorities' conclusions that § 623(a)(2) does not apply to an employer's failure to hire outside job applicants such as Plaintiffs. Resolution of this issue turns on whether the term "individual" as used in subsection (a)(2) includes outside job applicants.

In resolving a similar question regarding the meaning of the term "employee" in § 704(a) of Title VII, the Supreme Court began its analysis by evaluating whether the meaning of that term was plain or ambiguous. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "The plainness or

---

[5] Spirit argues the Tenth Circuit held in *Ellis v. United Airlines, Inc.*, 73 F.3d 999 (10th Cir. 1996) that § 623(a)(2) does not apply to outside job applicants, and that this portion of *Ellis* remains good law. (Doc. 410 at 9-10.) The comments in *Ellis* that § 623(a)(2) "does not appear to" address refusals to hire, aside from being non-committal, is tangential to *Ellis's* clear holding (later undermined by *Smith*) that the ADEA does not permit disparate impact claims. But the court need not decide here whether this portion of *Ellis* is binding because the result reached by the court is consistent with *Ellis's* comments about § 623(a)(2). Plaintiffs, meanwhile, argue the Tenth Circuit ruled otherwise in *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419 (10th Cir. 1993), and that the Supreme Court endorsed that view as "appropriate" in *Smith*. But *Faulkner* did not decide that a disparate impact theory was permissible on such claims; it "merely assume[d] the applicability of the disparate impact analysis without deciding whether it is a viable theory of recovery under the ADEA." *Id.* at 1428. And the issue of whether § 623(a)(2) applies to outside job applicants was not raised by the parties or discussed by the panel in *Faulkner*. The decision itself affirmed a jury verdict in favor of the employer. *Id.* at 1435. Finally, *Smith* cited *Faulkner* not for the proposition that § 623(a)(2) applies to outside job applicants, but to bolster its conclusion that disparate impact claims are cognizable under the ADEA. *Smith,* 544 U.S. at 237, n.8. *Faulkner* did not hold that outside applicants can recover under § 623(a)(2).

ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. Finding no clear answer in the specific language at issue or in Title VII's definition of "employee," the Court concluded in short order that the term "employee" was ambiguous, noting specifically that "[o]nce it is established that the term 'employees' includes former employees in some sections, but not in others, the term standing alone is necessarily ambiguous and each section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute." *Id.* at 343–44. The Court's inquiry focused on whether the term "employee" had a plain and consistent meaning throughout the act. Finding that it meant current employee in some sections and contemplated former employees in other sections, the Court determined that the term "employee" had multiple meanings within Title VII, and each use would have to be evaluated separately, thus leading to the conclusion that the term was ambiguous.

In both *Kleber* and *Villarreal*, the circuit courts concluded that the meaning of the term "individual" in § 623(a)(2) was circumscribed by that subsection's reference to the individual's "status as an employee." *Kleber*, 914 F.3d at 482; *Villarreal*, 839 F.3d at 963. Finding that language precluded reading the term "individual" so broadly as to encompass outside applicants for employment, both courts determined that the plain language of § 623(a)(2) precluded its use by outside applicants. *Kleber*, 914 F.3d at 487; *Villarreal*, 839 F.3d at 970.

Both *Kleber* and *Villarreal* included vigorous dissents arguing that the meaning of "individual" was ambiguous. However, even assuming for the moment that it was ambiguous, the court would nevertheless reach the same conclusion as the majority in those two cases by following the roadmap provided by the Supreme Court for resolving such ambiguities in *Robinson*.

The ADEA does not expressly define the term "individual." *See* 29 U.S.C. § 630. Nevertheless, the ADEA uses the term "individual" in a number of different sections. For example, § 623(a)(1) proscribes failure or refusal to hire an individual, as well as discharge of an individual, based on the individual's age. In that context, the term "individual" clearly contemplates employees and applicants. On the other hand, section 623(c)(1) uses the term "individual" without any reference to employment or application for employment, speaking instead in terms of labor organization membership. Providing yet another twist, section 623(c)(2) speaks of an individual in terms of "his status as an employee or as an applicant for employment." Obviously, if the term "employee" contemplated applicants for employment in this subsection, there would have been no need to separately address the individual's status as "an applicant for employment." Thus, while subsection (c)(2) comprehends the meaning of "individual" to include both employees and applicants, it does so because that subsection expressly addresses an individual in those terms. By contrast with all the foregoing, subsection (a)(2) refers to an individual in terms of "his status as an employee," without any mention of his status as an applicant for employment. Taken collectively, the court concludes that the term "individual" has different meanings in different sections and subsections of the ADEA; therefore, continuing with the assumption that the plain language of § 623(a)(2) does not resolve the issue, "the term standing alone is necessarily ambiguous and each section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute." *Robinson.* 519 U.S. at 343–44.

A major factor supporting the conclusion that § 623(a)(2) does not apply to outside applicants is that other subsections within § 623 contain similar language but they specifically prohibit discrimination against applicants. A provision applicable to labor unions, § 623(c), makes it unlawful for a union to limit, segregate, or classify its membership in ways that would "deprive

any individual of employment opportunities … or otherwise adversely affect his status as an employee *or as an applicant for employment*…." An anti-retaliation provision, § 623(d), makes it unlawful for an employer to retaliate against "any of his employees *or applicants for employment*" because of their participation in a protected activity. *See also* 29 U.S.C. § 633a (prohibiting age discrimination in federal "personnel actions affecting employees *or applicants for employment*"). Thus, in multiple other provisions, Congress made clear through express language when it intended a provision of the ADEA to apply to job applicants as well as employees. The specific inclusion of "applicants" in these provisions, but not in a similar clause in subsection (a)(2), strongly suggests congressional intent to exclude applicants from (a)(2). *Russello v. United States,* 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted). The logical inference from the text and structure of § 623 is that Congress intended to draw a distinction between employees and applicants, and that the exclusion of applicants from subsection (a)(2) means applicants are not covered by that provision.

A similar – and equally strong - inference arises from Congress's 1972 amendment of a nearly identical provision in Title VII. The sequence of events was recounted by Judge Rosenbaum in his concurrence in *Villarreal.* He noted that when the ADEA was adopted in 1967, the operative language of § 623(a)(2) was taken from § 703(a)(2) of the Civil Rights Act of 1964. *Villarreal*, 839 F.3d at 979. But in 1972, Congress amended the Title VII provision to specifically include "applicants," making it unlawful for an employer "to limit, segregate, or classify his employees *or applicants for employment*" where doing so would have an adverse effect because of race or some other prohibited reason. *See* Equal Employment Opportunity Act of 1972, Pub. L. 92-261, 86 Stat.

8

103, 109; 42 U.S.C. § 2000e-2(a)(2). Despite the identical language in § 623(a)(2), Congress did not amend that provision. Furthermore, in 1974 Congress amended the ADEA to apply it to federal employment and made that provision applicable to decisions affecting "employees *or applicants for employment*." 29 U.S.C. § 633a. Although caution is warranted against inferring too much from congressional inaction, in this instance the disparate treatment of two identical statutory provisions makes it reasonable to infer that Congress intended the provisions to carry different meanings according to their differing terms. Moreover, Congress's amendment of the ADEA (§ 633a) shortly after it added "applicants" to Title VII makes the absence of "applicants" from § 623(a)(2) appear all the more purposeful. The absence of "applicants" from § 623(a)(2) thus indicates this provision applies only to employees and not to outside job applicants.

Yet another inference supporting the same conclusion arises from the contrast between subsections (a)(1) and (a)(2) of § 623. Subsection (a)(1) necessarily applies to job applicants by virtue of its reference to an employer's "fail[ure] … to hire … any individual…." But subsection (a)(2) includes no similar reference. It prohibits improper classifications of "employees" and elsewhere talks about affecting an individual's "status as an employee." The most reasonable inference from this structure is that Congress intended to exclude outside applicants from (a)(2) because it made no express reference to hiring or applicants and chose not to include language it used elsewhere in the same statute to cover applicants – *i.e.*, "employees or applicants." *Cf.* 29 U.S.C. § 623(d). *See also Ellis*, 73 F.3d at 1007, n.12 (Title VII amendment indicates "an intent that § 623(a)(2) of the ADEA not apply to applicants as § 623(a)(1) expressly does."); *Smith*, 544 U.S. at 266 (O'Connor, J., concurring) ("Section [623(a)(2)], of course, does not apply to 'applicants for employment' at all – it is only § [623(a)(1)] that protects this group.")

9

The dissents in *Kleber* and *Villarreal* raised a number of contrary arguments, as do Plaintiffs, but they ultimately fail to overcome the force of these inferences. For example, they argue *Griggs* applied the same language found in subsection (a)(2) to job applicants, and therefore the same construction must apply here. But as *Kleber* pointed out, "[n]owhere in *Griggs* did the Court state that its holding extended to job applicants," and the case itself was brought "by employees of Duke Power and not outside applicants." *Kleber*, 914 F.3d at 485. Thus, although some language in *Griggs* refers to hiring and could be construed to support Plaintiffs' argument, the case itself did not involve outside applicants and *Griggs* did not hold that the statute applied to such applicants. *See Griggs*, 401 U.S. at 426 ("All the petitioners are employed at the Company's Dan River Steam Station….")

Plaintiffs also argue, with justification, that one purpose of the ADEA was to address the disadvantage older workers face when seeking to regain employment after being displaced. *See* 29 U.S.C. § 621(a)(1). But § 623(a)(1) furthers that purpose by prohibiting discriminatory refusals to hire because of age, and the court cannot invoke statutory purpose to rewrite a different provision (§ 623(a)(2)) adopted by Congress. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008) ("We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable. Instead, we must give effect to the text Congress enacted....") Nor can the court ignore the numerous contextual indications that Congress purposely left "applicants" beyond the scope of § 623(a)(2). Finally, Plaintiffs argue that deference to agency discretion warrants a conclusion that § 623(a)(2) applies to outside applicants, because the Department of Labor and the Equal Employment Opportunity Commission have both interpreted the ADEA to permit disparate impact claims by job applicants. (Doc. 417 at 23-26.) But Plaintiffs cite no current regulation clearly stating that subsection (a)(2) applies to such applicants. They cite only 29 C.F.R. 1625.7(c) and

argue its use of "individual" "encompasses the 'employees or applicants' language of former section 1625.7(d)…." (Doc. 417 at 25.) The regulation Plaintiffs cite, however, addresses the RFOA – reasonable factors other than age – defense; it does not purport to determine whether subsection (a)(2) applies to outside applicants. Agency deference thus makes no difference to the outcome of this case. In sum, the court concludes that § 623(a)(2) does not authorize outside applicants to recover under a disparate impact theory for an employer's refusal to hire them.

B. <u>Whether Plaintiffs alleged that the policy was in effect while they were employees</u>. In response to Spirit's contention that 29 U.S.C. § 623(a)(2) only applies to employees and not outside job applicants, Plaintiffs first argue they qualify as "employees" because they "suffer from the disparate impact of policies Spirit developed and set into motion *while Plaintiffs were still employees.*" (Doc. 417 at 2) (emphasis in original.) But this contention suffers from a critical flaw: it is not in the complaint. The complaint alleges only that "after July 2013, Spirit implemented a policy … of rejecting applications for open positions from individuals terminated in the July 2013 RIF." (Doc. 1 at 80) (emphasis added.) The RIF took place in July 2013. And the complaint does not otherwise allege that the challenged policy was devised or implemented while Plaintiffs were still employed. The complaint elsewhere alleges that Spirit treated Plaintiffs differently than other applicants at a September 2013 Job Fair – well after Plaintiffs' employment was terminated - from which Plaintiffs "concluded that Spirit had decided not to rehire older former employees terminated in July 2013."[6] (*Id.* at 68.) Again, this allegation does not show that

---

[6] The complaint alleges at one point that Plaintiffs knew of no older employees from the RIF who were rehired, but there were "younger former Spirit employees, terminated in July 2013, who have been rehired." (Doc. 1 at 69.) The assertion that Spirit decided not to rehire *older* riffed employees is an allegation of disparate treatment, not disparate impact. This allegation appears to relate to Plaintiff's fourth claim for relief, which asserts a claim of disparate treatment under § 623(a)(1) based on Spirit's failure to rehire them. (*Id.* at 79.) As Spirit points out, the allegation that Spirit rehired younger but not older workers from the RIF appears inconsistent with Plaintiff's disparate impact allegation that Spirit "implemented a policy … of rejecting applications for open positions from individuals terminated in the July 2013 RIF." (Doc. 1 at 80.) Nevertheless, Spirit has not shown it is improper for Plaintiffs to make

11

Spirit devised or implemented the challenged policy of not rehiring "riffed" workers while Plaintiffs were still employees of Spirit. Plaintiffs thus cannot defeat the motion by arguing they were still employed by Spirit when the challenged policy was adopted or when they were affected by it because Plaintiffs failed to include any such assertions in their pleadings.

      C. <u>Whether § 623(a)(2) applies to former employees</u>. The court also rejects Plaintiffs' argument that even if the "individual" entitled to assert a claim under subsection (a)(2) must be an "employee," Plaintiffs have nevertheless stated a claim because "employee" in subsection (a)(2) includes former as well as current employees

      In *Robinson*, the Supreme Court examined section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), an anti-retaliation provision that makes it unlawful for an employer to discriminate against "any of his employees or applicants for employment … because he has opposed any practice made an unlawful employment practice … or because he has made a charge … under this subchapter." The plaintiff in *Robinson* was fired by Shell; he then filed an EEOC charge. *Robinson*, 519 U.S. at 339-40. While the EEOC charge was pending, the plaintiff sought a job with another company. He subsequently sued under § 704(a), claiming Shell gave him a negative job reference in retaliation for having filed the EEOC charge. *Id.* at 339. In examining whether the "employees" entitled to protection under § 704(a) include a former employee such as the plaintiff, the Supreme Court first concluded the term "employees" was ambiguous. Although at first blush it "would seem to refer to those having an existing employment relationship," this impression "does not withstand scrutiny in the context of § 704(a)." *Id.* at 341. The court noted there was no temporal qualifier in the statute or in Title VII's statutory definition of "employee." *Id.* at 341-42. The statutory definition – "an individual employed by an employer" – could mean an individual who

---

inconsistent claims at this stage. *See* Fed. R. Civ. P. 8(d). Given the apparently early state of discovery, the court presumes Plaintiffs have a good faith basis for asserting what appear to be mutually exclusive allegations.

12

"*is* employed" or one who "*was* employed." (That same statutory definition is found in 29 U.S.C. § 630(f) of the ADEA.) *Robinson* noted that a number of other Title VII provisions used "employees" to mean something more or different than "current employees," such as a remedial provision allowing "reinstatement or hiring of employees," which necessarily refers to former employees and others who are not currently employees. *Id.* at 342. There were "of course" other Title VII provisions using "employees" to refer unambiguously to current employees, such as a provision allowing different compensation for employees in different locations. *Id.* at 343. But these examples only demonstrate that the term may have a plain meaning in the context of a particular section, even though it is ambiguous standing alone, such that "each section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute." *Id.* at 343-44.

*Robinson* found the broader context provided by other sections of the statute helped to resolve the ambiguity in § 704(a). Inasmuch as several Title VII remedial provisions contemplate use by former employees, and discriminatory discharge is one of the unlawful practices against which Title VII is directed [42 U.S.C. § 2000e-2(a)], and given that a person filing a charge for a discriminatory discharge will necessarily be a former employee, "it is far more consistent" to include former employees among the "employees" entitled to protection in § 704(a). *Id.* at 345. The Supreme Court was further persuaded by an EEOC argument that reading § 704(a) to exclude former employees would undermine the effectiveness of Title VII by allowing postemployment retaliation, and it would also be inconsistent with the primary purpose of anti-retaliation provisions generally – *i.e.*, to maintain unfettered access to statutory remedial mechanisms. *Id.* at 346.

Having previously assumed, for sake of argument and analysis, that the term "individual" in § 623(a)(2) is ambiguous, the court nevertheless concludes that the context of subsection (a)(2)

13

does not support the sort of broad understanding of "employee" reached in *Robinson*. It is true that the ADEA permits some remedies that necessarily apply to former employees, such as "reinstatement." 29 U.S.C. § 626(b). But that remedy could apply to an individual who was unlawfully discharged in violation of § 623(a)(1); it does not necessarily imply that "employee" in subsection (a)(2) includes both current and former employees. Each of the three subsections in § 623(a) appears to have a different scope. Subsection (a)(1) does not mention the term "employee," but the provision necessarily protects persons who were employees at the time they were unlawfully discharged, as well as outside individuals who apply for employment. *See* 29 U.S.C. § 623(a)(1) (making it unlawful to "refuse to hire or to discharge any individual" because of age). Subsection (a)(3) includes the term "employee" and makes sense only as applied to current employees. *See* 29 U.S.C. § 623(a)(3) (making it unlawful in certain circumstances to "reduce the wage rate of any employee.") As for subsection (a)(2), that provision makes it unlawful for an employer "to limit, segregate, or classify his employees" in ways that deprive an "individual" of employment opportunities or adversely affect his "status as an employee." 29 U.S.C. § 623(a)(2). The context suggests that "employee" refers to someone employed at the time that a challenged limitation, segregation, or classification has the prohibited effect of depriving that person of employment opportunities or affecting his status as an employee. If that were not the intended point of reference, ordinary usage would dictate that some other time frame be specified. More specifically, the court fails to see how classifying or segregating employees, whether current or former, can affect an individual's status as a former employee (which is the key inquiry under this subsection), particularly since the court has already concluded, *supra*, that the term "individual" does not apply to job applicants. If the individual is not a job applicant, then his status as a former employee cannot plausibly be changed by the conduct prohibited under subsection (a)(2). Thus,

as used in § 623(a)(2), "individual" means a person who has an employment relationship with an employer at the time the employer's challenged limitation, segregation, or classification has an adverse effect.

**V. Conclusion**

IT IS THEREFORE ORDERED this 14th day of August 2019, that Defendants' motion for partial judgment on the pleadings (Doc. 409) is GRANTED. Plaintiffs' fifth claim for relief, alleging a disparate impact claim under 29 U.S.C. § 623(a)(2) based on Spirit's failure to hire Plaintiffs, is DISMISSED. Plaintiffs' motion for hearing (Doc. 424) is DENIED.

s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE