IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONETTA RAYMOND, *et al.,*

        Plaintiffs,

v.                                                  Case No. 16-1282-JWB

SPIRIT AEROSYSTEMS HOLDINGS, INC.,
and SPIRIT AEROSYSTEMS, INC.,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiffs' motion to amend the complaint (Doc. 455) and motion for reconsideration. (Doc. 466.) The motions are fully briefed and ripe for review. (Docs. 456, 463, and 472; 467, 475, and 480.) For the reasons stated herein, the motion to amend the complaint (Doc. 455) is GRANTED; the motion for reconsideration (Doc. 466) is DENIED AS MOOT.

**I. Background**

The Named Plaintiffs are a group of former employees of Spirit Aerosystems, Inc. (hereinafter "Spirit"), whose employment at Spirit's Wichita facility was terminated in a July 2013 reduction-in-force ("RIF"). Plaintiffs filed their complaint on July 11, 2016, "challenging their termination from employment on or about July 25, 2013 and Spirit's later exclusion of them from new job openings." (Doc. 1 at 2.) Plaintiffs sought relief stemming from Spirit's layoffs "that targeted and/or disproportionately affected older employees, including them, and also from Spirit's failures and refusals to rehire them." (*Id.* at 3.) The complaint alleged how Spirit devised a "headcount reduction program" in 2012 to reduce the number of employees at Spirit facilities and

how Spirit's plans "culminated in a July 25, 2013 [RIF] in which the Company fired the Named Plaintiffs and more than three hundred (mostly older) workers." (Doc. 1 at 5.) Spirit also allegedly "continued to discriminate against Plaintiffs and other similarly situated older workers by failing and refusing to consider those terminated in July 2013 for hundreds of new salaried and other job openings that Spirit has filled since then…." (*Id.* at 6.)

The complaint set forth nine claims for relief, including the following. The first claim alleged age discrimination by Spirit in its termination of Plaintiffs' employment in the July 2013 RIF, based on Spirit's disparate treatment of older workers. (Doc. 1 at 70-73.) The second claim was similar but alleged a disparate impact theory. (*Id.* at 73-75.) The third claim alleged that waivers signed by some of the Plaintiffs in exchange for severance benefits were invalid under the Older Workers Benefit Protection Act ("OWBPA"). The fourth claim alleged age discrimination, under a disparate treatment theory, in connection with Spirit's failure to rehire some of the Plaintiffs following the July 2013 RIF. (*Id.* at 79.) The fifth claim was similar to the fourth but was based on a disparate impact theory. (*Id.* at 80-81.) The latter claim alleged that "[a]fter July 2013, Spirit implemented a policy, procedure, and/or practice of rejecting applications for open positions from individuals terminated in the July 2013 RIF," and that "Spirit's failure and refusal to rehire former employees terminated in the July 2013 RIF had a significant adverse disparate impact on the work opportunities of former Spirit employees age 40 or above…." (*Id.* at 80.)

The complaint asserted the action on behalf of twenty-four named Plaintiffs and as an ADEA collective action on behalf of others similarly situated. Approximately 70 individuals opted-in to the collective action. By agreement of the parties, "Phase I" of the litigation focused on discovery and summary judgment pertaining to whether the OWBPA waivers signed by most of the Plaintiffs were enforceable. (Docs. 153, 215.) In December of 2018, the court ruled the

waivers were valid as to those workers who had signed them and who had received the required OWBPA disclosures, but not as to Plaintiffs who had not signed a waiver or received the required disclosures. (Doc. 385.) In March of 2019, the parties agreed to a conditional certification of the action under 29 U.S.C. § 216(b) with respect to Plaintiffs' failure to rehire claims. (Doc. 397.) The court approved a notice and opt-in period consistent with the parties' agreement. (Doc. 404.) No conditional certification had been sought or deadline set with respect to opting-in to the wrongful termination claims.

Spirit filed a motion for partial judgment on the pleadings challenging Plaintiffs' fifth claim for relief. (Doc. 409.) As indicated above, that claim relied on the ADEA's disparate impact provision, § 623(a)(2), and alleged that Spirit applied a policy of not rehiring former employees who were terminated in the July 2013 RIF. Section 623(a)(2) makes it unlawful for an employer "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." In its motion for partial judgment, Spirit argued that § 623(a)(2) does not authorize a disparate impact claim based on a failure to hire a non-employee applicant. (Doc. 410 at 3.) In their response, Plaintiffs asserted that Spirit's argument "fails because it ignores the fact that the Plaintiffs were terminated, then shut out of future employment opportunities pursuant to a *rehire* ban that was formulated while they were still employees of the Defendants." (Doc. 417 at 10.) Plaintiffs further asserted the "rehire ban was inextricably linked to and implemented as part of an employment policy, i.e., the Defendants' 2013 headcount reduction program." (*Id.* at 12.) Plaintiffs also asserted that § 623(a)(2) applies to former as well as current employees, and that it broadly applies to all individuals who are denied employment opportunities due to the disparate impact of an employer's policy. (Doc. 417 at 13-34.) In reply,

Spirit argued Plaintiffs were impermissibly "recast[ing] their failure-to-hire claims as employment claims" by alleging "new facts that are either absent from or in direct contradiction to their Complaint." (*Id.* at 3-4.)

The court granted Spirit's motion to dismiss the fifth claim. (Doc. 454.) The court first determined that § 623(a)(2) does not apply to an employer's refusal to hire a non-employee applicant. In so ruling, the court agreed with the reasoning of two recent decisions, one by the Seventh Circuit and one by the Eleventh Circuit. *See Kleber v. CareFusion Corp.*, 914 F.3d 480 (7th Cir.) (en banc), *cert. denied*, 140 S. Ct. 306 (Oct. 7, 2019); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958 (11th Cir. 2016) (en banc), *cert. denied,* 137 S. Ct. 2292 (June 26, 2017). The court also rejected Plaintiffs' argument that § 623(a)(2) applied because they had alleged harm from policies Spirit "developed and set into motion while Plaintiffs were still employees." (Doc. 454 at 11) (citing Doc. 417 at 2.) The court pointed out there was no such allegation in the complaint. (*Id.*) The court also rejected Plaintiffs' argument that § 623(a)(2) applied to them as former employees. The court found the "individual" mentioned in § 623(a)(2) "means a person who has an employment relationship with an employer at the time the employer's challenged limitation, segregation, or classification has an adverse effect." (*Id.* at 15.)

**II. Motion to amend complaint**

Plaintiffs move to amend the complaint to identify additional opt-in Plaintiffs, to delineate which claims for relief are asserted by each Plaintiff, and to add "clarifying language" regarding when Spirit's "rehire policy was developed and implemented by Spirit" in light of the court's finding that the initial complaint did not allege that this policy was developed and implemented while Plaintiffs were still employees of Spirit. (Doc. 456 at 2.) Spirit opposes the motion, arguing the amendment is an attempt to salvage the fifth claim for relief and to assert challenges to

4

OWBPA waivers by parties who previously chose not to join the lawsuit. (Doc. 463 at 2.) Spirit argues the proposed amendments are made in bad faith and were unduly delayed such that the motion should be denied. (*Id.*)

Federal Rule of Civil Procedure 15 provides in part that the court should freely give leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may deny leave on account of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101-02 (10th Cir. 2019) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962).

The Magistrate Judge's order of August 9, 2019, which was based on a communication from the parties, extended the deadline for motions for leave to join additional parties or to otherwise amend the pleadings to August 16, 2019. (Doc. 453.) Plaintiffs' motion for leave to amend was filed on August 16, 2019, and was thus timely under the schedule set by the court. (Doc. 455.) The fact that the filing of the proposed amendment is timely under the schedule agreed to by the parties and adopted by the court is a significant factor weighing against a finding of undue delay. Spirit argues the proposed amendment is nevertheless "a sham" that is "intended to circumvent the Court's prior rulings." (Doc. 463 at 1.) Not to be out-umbraged, Plaintiffs charge that Spirit "conveniently ignored" paragraph four of the initial complaint, which allegedly made clear that Spirit's refusal to rehire Plaintiffs was part of a single plan formulated prior to the July 2013 layoffs, and Plaintiffs "respectfully" assert that Spirit's "spurious accusations and unduly aggressive writing style is intended to obfuscate the flaws, misrepresentations and lack of substance" in its arguments. (Doc. 467 at 3, n.4.)

In spite of its massive length (92 pages), the initial complaint was anything but clear about Spirit's alleged policy of not rehiring persons terminated in the July 2013 RIF.[1]  *Cf.* Fed. R. Civ. P. 8(a) (complaint must contain "a *short and plain* statement of the claim") (emphasis added.) To the extent the vague assertions in paragraph four[2] might be taken as implying that Spirit adopted the non-rehire policy while Plaintiffs were still employees, any such inference was apparently refuted by allegations elsewhere specifically indicating the policy was adopted after the RIF, such as: "After July 2013, Spirit implemented a policy, procedure, and/or practice of rejecting applications for open positions from individuals terminated in the July 2013 RIF." (Doc. 1 at 80.) The court notes that when Plaintiffs argued against the motion to dismiss, they failed to point to any specific facts in the complaint stating that the rehire policy was developed and implemented while they were still Spirit employees. The court accordingly took at face value the allegation that the policy was put in place "[a]fter July 2013." (*Id.*)

Despite this, the court ultimately concludes Spirit has not shown undue delay or bad faith in connection with Plaintiffs' proposed amendment to the complaint. The court has considered whether Plaintiffs have, as Spirit claims, intentionally set a moving target by *reversing* their initial allegations with respect to adoption of the rehire policy, or whether Plaintiffs are attempting to *add or clarify* a point they overlooked or inadequately addressed in the initial complaint. *See Zokari v. Gates,* 561 F.3d 1076, 1086 (10th Cir. 2009) (leave to amend should be denied where plaintiff is using Rule 15 to make the complaint a moving target). Although the issue is not free from doubt, the court cannot say with the requisite confidence that this is a bad-faith effort to reverse

---

[1] The existence of the policy itself was subject to seemingly contradictory allegations, as the complaint alleged at one point that Spirit had a facially neutral policy of not hiring any riffed workers, but elsewhere alleged that Spirit rehired younger but not older riffed workers. (*See* Doc. 454 at 11, n.6) (citing to contradictions contained in the complaint).
[2] Paragraph four alluded to harmful "decisions, policies, practices and plans" developed beginning in 2012, "culminating in" the RIF, and "continuing … in the form of the ongoing … refusal to hire Plaintiffs"),

6

the initial allegations. Plaintiffs' initial complaint contains enough ambiguity that Plaintiffs can plausibly claim to be alleging previously overlooked facts or clarifying ambiguous points with respect to the timing of the non-rehire policy. Other factors similarly weigh in favor of granting leave to amend. The amendment is timely asserted under the governing schedule. Spirit has made no showing of prejudice to its ability to defend the claim on the merits. Finally, the law generally recognizes a preference for resolving claims on the merits rather than on technical grounds. *See Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1204 (10th Cir. 2006) (the purpose of Rule 15(a) is "to provide litigants 'the maximum opportunity for each claim to be decided on the merits rather than on procedural niceties.'") Accordingly, the court will allow the amendment. In so ruling the court makes no finding with respect to futility of the amendment or whether the amended complaint states a valid claim under § 623(a)(2). Spirit has not challenged the proposed amendment on futility grounds and says it will address the merits of the amended claim in a motion to dismiss. (Doc. 463 at 2, n.1.) The court will address any such arguments if and when they are raised and briefed by the parties.

The court likewise grants leave with respect to Plaintiffs' other proposed amendments. This includes the amendment adding two[3] individual Plaintiffs who recently consented to join the collective claim for discriminatory termination. (Docs. 470, 471.) Plaintiffs contend these two individuals did not receive the required OWBPA disclosures from Spirit prior to executing waivers, such that, under the court's prior ruling, the waivers would not bar their claims of discriminatory termination. Although Spirit objects that these individuals have belatedly "come out of the woodwork" after the waiver issue was litigated, the court concludes, after consideration of all the facts, that the amendment should be allowed. (Doc. 463 at 2.) As noted previously,

---

[3] A third individual initially consented to join but subsequently withdrew his consent. (Doc. 472 at 1, n. 1.)

Plaintiffs' request was made within the deadline for motions for leave to join additional parties or to otherwise amend the pleadings. (Doc. 453.) Spirit has not shown that their delay in coming forward warrants precluding these individuals from asserting their claims. To the extent Spirit argues these claims have been "manufactured" as a defense to the waivers, that is of course an issue Spirit can explore through discovery.

In view of the above ruling allowing Plaintiffs to file an amended complaint, the court concludes that Plaintiffs' motion to reconsider the prior ruling concerning the original complaint is now moot.

IT IS THEREFORE ORDERED this 3rd day of January, 2020, that Plaintiffs' motion to amend the complaint (Doc. 455) is GRANTED. Plaintiffs may file their amended complaint within ten days of this order. Plaintiffs' motion for reconsideration (Doc. 466) is DENIED AS MOOT.

\_\_\_\_\_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE