IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DONETTA RAYMOND, *et al.*,

           Plaintiffs,

v.                                          Case No. 16-1282-JWB

SPIRIT AEROSYSTEMS HOLDINGS, INC., and
SPIRIT AEROSYSTEMS, INC.,

           Defendants.


## MEMORANDUM AND ORDER

    Before the court is Defendants' partial motion to dismiss. (Doc. 524.) The motion is fully briefed and is ripe for decision. (Docs. 525, 534, 540.) For the reasons stated herein, the motion is GRANTED IN PART AND DENIED IN PART as stated in this order.

## I. Facts

    This action is brought by twenty-four former Wichita-based aerospace engineers and other salaried, non-management employees, for themselves ("the Named Plaintiffs"[1]) and collectively on behalf of others similarly situated, under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. The Defendants are Plaintiffs' former employer Spirit Aerosystems, Inc. and its owner, Spirit Aerosystems Holdings, Inc. (hereinafter referred to collectively as "Spirit"). The Named Plaintiffs and others who have opted-in to the collective action assert age discrimination claims, under both disparate treatment and disparate impact theories, in connection

---

[1] The Named Plaintiffs are: Donetta Raymond; Frederick Heston; Jilun Sha; Randy Williams; William Scott Denny; Debra Hatcher; Brian Marks; Russell Ballard; Gregory Bucchin; Bruce Ensor; Forrest Faris; Cheryl Renee Gardner; Clark T. Harbaugh; Craig Hoobler; Brian Scott Jackson; William Koch; Fred Longan; David B. Miller; Kenneth L. Poole, Jr.; Bahram Rahbar; Robert Troilo; and Curtis J. Vines. (Doc. 522 at 1.)

with Spirit's termination of their employment in July of 2013 and its subsequent refusal to rehire them. Some of the Plaintiffs additionally bring individual claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and/or the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. The amended complaint contains nine claims for relief, which are summarized below. (Doc. 522.)

First claim: Collective action for age discrimination in termination – disparate treatment. Plaintiffs' first claim alleges disparate treatment under the ADEA in connection with Plaintiffs' termination from employment in a July 25, 2013, reduction-in-force ("RIF"). The claim is asserted on behalf of all Named Plaintiffs and opt-in Plaintiffs. (Doc. 522 at 74.) It alleges that Spirit "designed and implemented a plan to terminate older employees such as the Plaintiffs" in the belief that this would save money under Spirit's self-insured employee health insurance plan. To that end, Spirit allegedly engaged in several pretexts for discrimination, including by "designating" hundreds of older employees represented by the Society of Professional Engineering Employees in Aerospace ("SPEEA"), such that the seniority of these employees did not protect them from termination in a RIF, and by claiming to eliminate Plaintiffs' jobs but actually hiring younger workers to fill those jobs. Plaintiffs allege their age made a difference in Spirit's selection of them for termination in July 2013, such that Spirit's actions violated 29 U.S.C. § 623(a)(1). (Doc. 522 at 74-76.)

Second claim: Collective action for age discrimination in termination – disparate impact. The second claim alleges that Spirit selected older employees for termination using unreasonable, age-neutral factors that caused the terminations to disparately affect older workers. These factors included: consideration of costly medical conditions; "designating" all workers with a "C" retention rating, thereby preventing more experienced workers from being placed in a more

protected retention category; relying on lower performance and retention ratings from recent reviews, even for workers with a history of solid prior performance; relying on subjective criteria in performance ratings, including "versatility" and "criticality," and giving managers inadequate guidance on how to avoid age discrimination.  These acts were allegedly in violation of the ADEA, 29 U.S.C. §623(a)(2).  (*Id.* at 77-78.)

Third claim: Collective action alleging invalid ADEA waivers.  The third claim alleges that ADEA waivers signed by 20 Named Plaintiffs and 69 opt-in Plaintiffs were invalid under the Older Workers Benefit Protection Act (OWBPA) amendments to the ADEA.  (*Id.* at 79-80.)

Fourth claim: Collective action for age discrimination in failure to hire – disparate treatment.  The fourth claim alleges that the Named Plaintiffs and 64 opt-in Plaintiffs, after their termination in July 2013, either applied for one or more open positions with Spirit or were deterred from doing so by Spirit's discriminatory practices, and that their age made a difference in Spirit's decision not to rehire them.  These "Rehire Plaintiffs" allege that Spirit's conduct violated 29 U.S.C. § 623(a)(1).  (Doc. 522 at 82-83.)

Fifth claim: Collective action for age discrimination in failure to hire – disparate impact.  The fifth claim alleges that "[w]hile planning the July 2013 RIF, Spirit developed a policy, procedure, and/or practice of rejecting applications for open positions from individuals terminated in the July 2013 RIF."  Spirit's "failure and refusal to rehire former employees terminated in the July 2013 RIF had a significant adverse impact on the work opportunities of former Spirit employees age 40 or above, including the Rehire Plaintiffs." This conduct was "not based on 'reasonable factors other than age' and violated the ADEA," 29 U.S.C. §623(a)(2).  (Doc. 522 at 84.)

Sixth claim: Individual ADA claims for termination because of disability.  Three Named

Plaintiffs (Raymond, Hatcher, and Jackson) and one opt-in Plaintiff (Doyon) claim that Spirit

discriminated against them on the basis of a disability in connection with their termination in July

2013.  Plaintiffs allege that in July 2013, Plaintiffs Raymond, Jackson, and Doyon had one or more

disabilities within the meaning of the ADA, that they could perform the essential functions of their

jobs with or without reasonable accommodation for their disabilities, and that Spirit violated the

ADA by terminating them on the basis of their disabilities (and also by terminating Jackson for

requesting reasonable accommodations).  Additionally, Hatcher's husband had disabilities within

the meaning of the ADA, and Spirit allegedly violated the ADA by terminating her and Jackson

"on the basis of their association with family members with disabilities . . . "  (Doc. 522 at 85-86.)

Seventh claim: Individual claims for willful violation of the FMLA – retaliatory discharge.

Plaintiff Hatcher alleges she took intermittent FMLA leave in 2012 to care for her husband's

serious medical condition.  Plaintiff Jackson alleges he took FMLA leave in 2012 to care for his

own and for his daughter's serious medical conditions.  These two "Retaliation Plaintiffs" allege

that Spirit decided to terminate them "at least in part because of and in retaliation for their use,

request to use and/or notice to Spirit of their intent to use FMLA leave to which they were entitled."

(*Id.* at 87.)  The Retaliation Plaintiffs allege this conduct was willful and that it violated the FMLA,

29 U.S.C. §§ 2615(a)(2) and 2617(c)(2).

Eighth claim: Individual ADA claims for discriminatory refusal to hire.  Fourteen Named

Plaintiffs and 19 opt-in Plaintiffs, who are named in paragraph 43 of the amended complaint and

referred to as "the ADA Rehire Plaintiffs," allege that they each applied for at least one open

position with Spirit after their terminations in July 2013, or were deterred from doing so by Spirit's

discriminatory behavior; that at the time of their termination they each had one or more disabilities

or were associated with family members who had disabilities as defined by the ADA; that Spirit's knowledge of their disabilities or association with family members with disabilities made a difference in Spirit's refusal to rehire them, in Spirit discouraging them from applying for open positions, and "in Spirit's establishment of policies and practices screening out applicants and potential applicants with disabilities who were terminated in the July 2013 RIF." All of this conduct allegedly violated the ADA and was done willfully and with reckless indifference to the Rehire Plaintiffs' rights under the ADA.

Ninth claim: Individual claims for willful violation of the FMLA – retaliatory refusal to hire. Named Plaintiffs Heston, Hatcher, Marks, Jackson, Longan, Koch and Rahbar (the "FMLA Rehire Plaintiffs") allege that they used FMLA leave to which they were entitled within a time proximate to their termination in July 2013; that Spirit decided to terminate them at least in part because of and in retaliation for their use of FMLA leave; that each of them applied for one or more open positions with Spirit after July 25, 2013; and that "Spirit decided not to hire the FMLA Rehire Plaintiffs, at least in part, because of and in retaliation for their prior use, request to use and/or notice to Spirit of their intent to use FMLA leave to which they were entitled prior to July 25, 2013." (Doc. 522 at 90-91.)

**Facts relating to exhaustion of administrative remedies.**

*ADEA and ADA termination claims.* From March 26 through May 21, 2014, each of the Named Plaintiffs filed complaints with the Equal Employment Opportunity Commission (EEOC) against Spirit, alleging age discrimination with respect to their selection for termination in the July 2013 RIF. (*Id.* at 18-19.) These complaints are referred to by the parties as the "termination charges." The complaints were filed within 300 days of the RIF.

*ADEA failure-to-hire claims*. At least 20 Named Plaintiffs applied for available positions with Spirit after the RIF.  Between July 8, 2014, and February 23, 2015, sixteen of those individuals filed separate EEOC charges of discrimination, on behalf of themselves and others similarly situated, charging that Spirit engaged in age discrimination by refusing to rehire them. For purposes of satisfying the exhaustion requirements on their ADEA failure-to-hire claims, "four of the twenty Named Plaintiffs who applied for rehire by Spirit (Denny, Ensor, Sprague, and Tolson) rely on the EEOC charges of the other sixteen." (*Id.* at 20.)  Four other Named Plaintiffs (Heston, Sha, Kock, and Poole) did not apply for rehire into specific open positions.  According to the amended complaint, the EEOC complaints of these four Plaintiffs allege age discrimination for Spirit's failure-to-hire them "in their capacity as applicants [who were] deterred from applying for open positions for which they were qualified." (*Id.*)[2]

*ADA individual termination claims*. Three of the four Named Plaintiffs who did not sign waivers at the time of their termination (Raymond, Hatcher, and Jackson) and one opt-in Plaintiff who did not sign a waiver (Doyon) assert individual termination claims under the ADA.  These Plaintiffs timely asserted such claims in EEOC charges that also contained their ADEA termination claims.  (*Id.* at 21.)

*ADA individual failure-to-hire claims.* Fourteen Named Plaintiffs (Ballard, Denny, Faris, Gardner, Hatcher, Heston, Hoobler, Jackson, Longan, Marks, Miller, Raymond, Sha, and Williams) and 19 opt-in Plaintiffs (Byram, Chandler, Chavez, Doyon, Hpper, Hottman, Hutchinson, Kellams, Lawellin, Meadows, Payne, Roberts, Russell, Samo, Schmidt, Tieu, Ward, Weber, and West) who assert ADEA failure-to-hire claims also assert individual ADA failure-to-

---

[2] As noted by the court in its discussion *infra* relating to exhaustion of the "deterred applicant" claims, although the complaint makes the foregoing allegation, the actual EEOC charges of the aforementioned Plaintiffs did not state that these individuals were deterred from applying for open positions, nor did they assert that such charges were being made on behalf of other employees.

hire claims.  Sixteen Named Plaintiffs filed EEOC complaints with individual failure-to-hire ADA

claims. "The Named Plaintiffs and Opt-in Plaintiffs with ADA failure to hire claims rely … on the

EEOC failure to hire charges of the Named Plaintiffs that filed such charges." (*Id.* at 22.)

In total, 26 former employees – the "Charging Plaintiffs" – filed termination and/or failure-

to-hire charges with the EEOC.  A copy of their complaints, with a summary cover page compiled

by Defendants, is attached at Doc. 525-2. The summary page prepared by Defendants includes

columns noting, as to each EEOC charge, the filing date, the date 300 days before the filing date,

the date of the EEOC's right-to-sue letter, and whether the charge complained about a termination

or a failure-to-hire. (*Id.* at 2-3.)

The termination charges, with a few exceptions, included allegations consisting of or

similar to the following:

- o "I was … highly qualified for [my position] … and received at least satisfactory or better performance evaluations throughout my tenure."
- o "At some point in 2012 or 2013, Spirit decided to go 'self-funded' for its employee health insurance…."
- o "I was insured through Spirit health insurance … [and me and my spouse] utilized that benefit for necessary medical care for our disabilities." "Spirit management was tracking the cost … of all insurance claims," and the information tracked was broken down by categories including the "age of the employee (or of the individual associated with that employee…." "Simultaneously with Spirit's implementation of [its switch] to a self-funded plan, … senior management began compiling a list of individuals that Spirit planned to terminate in July 2013. This list of targeted employees was provided by senior management to lower level supervisors…." "I believe that … my name was one of those on the list … [or that my manager] was otherwise encouraged to target me."
- o "Because so many of the pre-selected employees (particularly those over the age of 40 and/or those with disabilities) had histories of excellent performance, senior management needed the lower level managers to create documentation of alleged poor performance that would eventually be used to justify the terminations of the individuals on those lists.  Accordingly, … [my manager] and other lower level managers were directed to find reasons to dramatically downgrade the performance ratings of the targeted employees."
- o "Despite my long tenure and my excellent performance evaluations, I was … informed in early 2013 that my overall performance rating for 2012 had been

downgraded to 'meets some expectations.' The reason given for my lower performance rating" was pretextual.

o "Shortly thereafter … [I was informed] that I had received a 'designated C' [retention] rating … even though I had previously been rated an 'A' during both of the prior retention exercises." "Spirit has very rarely 'designated' employees," but in 2013 it "changed its policy and/or actual practice … [and assigned] a designated rating to *hundreds* of employees."

o "[O]n July 25, 2013, I was … informed that my employment with Spirit was terminated.  That same day, Spirit terminated 359 other employees as part of a mass lay off."

o "After I was fired, I learned that, like me, many other Spirit employees that had been laid off on July 25, 2013 were also over the age of forty (40) and either had significant medical issues … or were associated with an individual" with such issues.

o "Many of the employees that were laid off … also received a 'designated C' retention rating on July 1, 2013, and many were also placed on sham Performance Improvement Plans…."

o "Less than two months after the July 25, 2013 layoffs, Spirit held a job fair to recruit new employees" and Spirit later announced it had met a goal of hiring 400 new employees, such that "the duties of the employees terminated in July 2013 have been assumed by newly-hired employees, and the employees laid off in July 2013 were not terminated due to adverse economic conditions."

o "At least some of the employees under the age of 40 and/or that were not disabled … have been rehired by Spirit," but "none of the employees over the age of 40 and/or that are disabled … that were fired in the July 2013 layoffs have been rehired as employees."

o "I believe that Spirit engaged in a pattern or practice of unlawful discrimination, conduct whose purpose and effect was and has been to discriminate on the basis of age, disability, age plus disability, and/or age-neutral practices with a disparate age impact, and/or unlawful retaliation when it targeted me and other similarly situated employees over the age of forty (40) and/or those with disabilities/histories of disabilities … for termination in July 2013, and when it changed its policies and practices regarding application of its performance management and retention rating processes to me and my similarly situated counterparts to justify its actions."

(*See* Doc. 525-2 at 4-9.)

The failure-to-hire charges include allegations similar to the following:

o "Spirit has and continues to engage in a pattern or practice of unlawful discrimination and/or retaliation by failing to hire me and others similarly situated, conduct with the purpose and effect of discriminating against us because of our age, disabilities, … and/or in retaliation for out having engaged in protect activity by requesting a reasonable accommodation for our [disabilities] and/or by complaining about what we believed constituted unlawful discrimination, and/or to implement facially-neutral practices which are nevertheless discriminatory because

> they have a disparate impact on me and others similarly situated, all in violation of
> the ADEA [and] the ADA….”
>
> o  “I have applied for … open positions with Spirit” after July 2013 and have not been
>    hired.
>
> o  “[A]t least some of the employees under the age of 40 and/or that were not disabled
>    … who were laid off in July 2013 have been rehired by Spirit as employees, but to
>    my knowledge *none* of the employees over the age of 40 and/or that are disabled
>    … that were fired in the July 2013 layoffs have been rehired as employees, despite
>    their applications for available positions for which they are qualified.”
>
> o  I believe that Spirit’s failure to hire me and others similarly situated for the
>    available positions we have applied for is because of discrimination, purposeful and
>    otherwise, due to our ages, our medical conditions, and disability … and/or in
>    retaliation for having engaged in protected activity….”
>
> o  I want this charge filed on behalf of myself and all others similarly situated.

(*See* Doc. 525-2 at 23-27.)

Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss the following: 1) all claims

Plaintiffs have failed to exhaust administratively with the EEOC; 2) all untimely ADA claims; 3)

Plaintiff’s disparate impact hiring claim; 4) hiring claims by non-applicants; 5) hiring claims by

individuals who neither applied nor were deterred from applying for Spirit jobs; 6) claims by a

party without capacity or standing to sue; and 7) previously dismissed claims that are repleaded in

the first amended complaint.  (Doc. 524 at 1.)

## II.  Motion to dismiss standards

In order to withstand a motion to dismiss for failure to state a claim under Fed. R. Civ. P.

12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is

plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).  Plausible does not mean “likely

to be true,” but rather refers “to the scope of the allegations in a complaint: if they are so general

that they encompass a wide swath of conduct, much of it innocent,” then the plaintiff has not

“nudged [his] claims across the line from conceivable to plausible.” *Id.* (citing *Twombly*, 127 S.

Ct. at 1974).

All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). As the Tenth Circuit recently observed:

> Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide fair notice of what the claim is and the grounds upon which it rests. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts. If, in the end, a plaintiff's well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim.

*Carbajal v. McCann*, No. 18-1132, 2020 WL 1510047, at *3 (10th Cir. Mar. 30, 2020).

The court will treat Defendants' argument that Plaintiffs have failed to properly exhaust administrative remedies as the assertion of an affirmative defense under Rule 12(b)(6). *See Cirocco v. McMahon*, 768 F. App'x 854, 857 (10th Cir. 2019). Such a defense may be raised in a motion to dismiss when the grounds for the defense appear on the face of the complaint. *Id.* at 858 (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)). Although the court normally considers only the allegations of the complaint in deciding a Rule 12(b)(6) motion, the court may also properly consider documents referred to in the complaint, provided they are central to the plaintiff's claims and the parties do not dispute their authenticity. *Smallen v. The W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020). The court finds that Plaintiffs' EEOC complaints (Doc. 525-2), which are referred to in the amended complaint (Doc. 522 at 18-24), and which are unchallenged insofar as authenticity is concerned, may properly be considered here. *See McConnell v. Kansas Dep't of Wildlife, Parks & Tourism*, No. 19-4120-JWB, 2020 WL 1659878, at *3 (D. Kan. Apr. 3, 2020); *Dunmars v. Ford Cty., Kansas Bd. of Commissioners*, No. 6:19-CV-01012-EFM, 2019 WL 3817958, at *3 (D. Kan. Aug. 14, 2019) ("Neither party has raised doubts about the legitimacy of

the [administrative] complaints. Therefore the Court rejects [plaintiff's] invitation to disregard the administrative charges and consider only his pleading.")

## III.   Analysis

### A. Exhaustion.

1. <u>Standards</u>.  The ADEA and the ADA both require a plaintiff to exhaust administrative remedies before filing suit.  *See Shikles v. Sprint/United Mgmt. Co.,* 426 F.3d 1304, 1317 (10th Cir. 2005) (noting ADEA requirement), *overruled in part by Lincoln v. BNSF Ry. Co.,* 900 F.3d 1166, 1185 (10th Cir. 2018); *Jones v. U.P.S., Inc.,* 502 F.3d 1176, 1183 (10th Cir. 2007) (ADA requires exhaustion).  The purpose of administrative exhaustion is to give notice of the alleged violation to the employer and to give the EEOC an opportunity to conciliate the claim.  *Jones v. Needham,* 856 F.3d 1284, 1290 (10th Cir. 2017).

In Kansas, an ADEA plaintiff must ordinarily file a complaint (or "charge") with the EEOC within 300 days of the alleged discriminatory conduct.  *See* 29 U.S.C. § 626(d).  A charge must contain information required by regulation – including a general description of the action or practices complained of – and a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.  *See Fed. Express Corp. v. Holowecki,* 552 U.S. 389, 402 (2008).

Although each individual asserting a claim must ordinarily file his or her own EEOC charge, federal courts "universally hold that an individual who has not filed an administrative charge can opt-in to a suit by any similarly situated plaintiff under certain conditions." *Thiessen v. Gen. Elec. Co.*, 267 F.3d 1095, 1110 (10th Cir. 2001) (citations omitted.)  This "single-filing" or "piggyback" rule allows a plaintiff who did not file an EEOC charge "to piggyback on the EEOC complaint filed by another person who is similarly situated." *Id.*  The policy behind the rule is that

it would be wasteful for numerous employees, all having the same grievance, to have to process identical complaints with the EEOC. *Id.* "As long as the EEOC and the company are aware of the nature and scope of the allegations, the purposes behind the filing requirement are satisfied and no injustice or contravention of congressional intent occurs by allowing piggybacking." *Id.* (citation omitted.)

2. Exhaustion of disparate impact claims. Defendants first argue that all of Plaintiffs' disparate impact claims (both for termination and failure-to-hire) must be dismissed because Plaintiffs did not exhaust those claims. Defendants argue the EEOC charges only mentioned disparate impact in conclusory fashion, without any supporting facts, and without identifying any age-neutral policy that caused Plaintiffs' termination or Spirit's failure to hire them. (Doc. 525 at 13.)

The court finds the EEOC charges filed by Plaintiffs relating to their terminations[3] were sufficient to exhaust a claim for disparate impact. To begin with, the charges expressly asserted that Spirit engaged in conduct whose "purpose *and effect*" was to discriminate on the basis of age and disability, and that Spirit used "age-neutral practices with a disparate age impact…." (Doc. 525-2 at 6) (emphasis added.) The charges then described how Spirit allegedly tracked employee health expenses and simultaneously compiled a termination list, how managers were directed to find reasons to dramatically downgrade performance ratings to justify the termination of so many well-performing employees over 40 and/or who had disabilities, and how Spirit took the unusual step of "designating" hundreds of employees with a "C" retention rating. (*Id.* at 7-8.) After the termination, Plaintiffs allegedly learned that "many other Spirit employees that had been laid off

---

[3] Because the court concludes *infra* that Plaintiffs' allegations of disparate impact in hiring do not state a claim for relief under 29 U.S.C. §623(a)(2), the court does not address whether Plaintiffs exhausted such claims in their EEOC charges.

on July 25, 2013 were also over the age of forty (40) and … had significant medical issues….”
(*Id.* at 8.)  Under EEOC regulations, a charge is sufficient when it “describe[s] generally the action
or practices complained of.” *Id.* § 1601.12(b).  Here, the charges generally described the practices
Plaintiffs were complaining about, including the impact Spirit's employment policies had on older
employees. Defendants argue Plaintiffs described only a disparate treatment theory, pointing to
allegations that Spirit specifically “targeted” older workers and used “pretextual” reasons to fire
them.  But the charges expressly invoked disparate impact as well as disparate treatment and set
forth facts that could apply to both theories.  Several of the employment practices described in the
EEOC complaints, whatever their underlying motivation, were facially neutral as to age but
allegedly resulted in termination of “many … Spirit employees … over the age of forty (40) ….”
(Doc. 525-2 at 8.)  Such complaints were sufficient to put both Spirit and the EEOC on notice that
Plaintiffs were claiming these practices had a disparate impact on older employees.  *Cf. Foster,*
365 F.3d at 1196 (noting the central purposes of the exhaustion requirement was satisfied where
the description of the challenged actions was sufficient to put the employer on notice of the age
discrimination charge and give the EEOC an opportunity to conciliate the claim.)  The scope of an
EEOC investigation of the charges would reasonably be expected to include the allegations of
disparate impact.  *Smith v. Cheyenne Mtn. Ret. Inv'rs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018)
(citation omitted) (noting a plaintiff's claim in court “is generally limited by the scope of the
administrative investigation that can reasonably be expected to follow the charge of discrimination
submitted to the EEOC.”)

3. “Deterred applicant” claims.  Spirit next argues Plaintiffs failed to exhaust hiring
discrimination claims for laid-off employees who were deterred from filing job applications.  Spirit

argues that the Charging Parties asserted no such deterred applicant claims, and that the Non-Charging Parties cannot piggyback on claims that were never asserted.  (Doc. 525 at 14.)

In response, Plaintiffs first contend that the Charging Parties exhausted deterred applicant claims by including "specific allegations that they were deterred from applying for jobs at Spirit." (Doc. 534 at 11.)  But Plaintiffs point to no such language in the EEOC charges.  (*Id.*)  Nor does the court find any language in the EEOC charges referring to such claims or purporting to assert them on behalf of persons who did not file job applications.  Plaintiffs also argue that exhaustion of claims by those persons who applied for open positions served to exhaust claims of deterred applicants because "the same discriminatory policies and practices were the source of Spirit's hiring decisions, regardless of whether a Plaintiff applied to Spirit or was deterred from applying, making it unnecessary to specifically mention deterred applicants."  (*Id.* at 11-12.)  The court rejects this argument because the administrative complaints did not give fair notice that Plaintiffs were seeking to assert any claim for Spirit's failure to hire persons who did not file job applications. The complaints alleged, among other things, that Spirit "has and continues to engage in a pattern or practice of unlawful discrimination … by failing to hire me and others similarly situated…." (Doc. 525-2 at 26.)  In support of that allegation, one (typical) charge alleged that the employee "applied for … open positions with Spirit," only to receive rejection emails or emails "notifying me that the positions I applied for are no longer available." (*Id.* at 27.)  It further asserted that Spirit rehired some laid-off employees who were under 40 or not disabled, but none of the laid-off employees over 40 or who have disabilities were rehired "despite their applications for available positions for which they are qualified."  (*Id.*)  The factual allegations concluded that "Spirit's failure to hire me and others similarly situated *for the available positions we have applied for* is

14

because of discrimination, purposeful and otherwise, due to our ages … [and] disabilit(ies)…." (*Id.*) (emphasis added.)

The allegations in an EEOC charge are given a liberal construction, but the charge "must contain facts concerning the discriminatory … actions underlying each claim," and the ultimate question is whether "the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC complaint]." *Id.* (citation omitted.)   The court's task is "not to search for magic words," but to "parse the substance of the allegations [in the EEOC charge] to determine whether they fairly embrace" a claim. *Patterson v. Kalmar Solutions, Inc.*, 19-2745-DDC, 2020 WL 2735743, *3 (D. Kan. May 26, 2020).

The EEOC charges filed here asserted that Spirit discriminated in hiring, based on age and/or disability status, when it rejected applications from qualified laid-off employees.   The fair inference is that the "similarly situated" persons on whose behalf claims were asserted were other laid-off employees whose applications were likewise rejected.   *Cf. Pines v. State Farm Gen. Ins. Co.,* No. 89-631-AHS, 1992 WL 92398, *12 (C.D. Cal. Feb. 25, 1992) (finding persons who were deterred from applying for a position were not similarly situated to a person who applied and was rejected); *Rabin v. PricewaterhouseCoopers, LLP,* No. 16-2276-JST, 2018 WL 3585143, *6 (N.D. Cal. July 26, 2018) (same).   It is plausible, assuming Spirit had a discriminatory hiring policy, that both applicants and persons deterred from applying could be victims of the same discriminatory policy.   *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977) ("The effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity. A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are

unwilling to subject themselves to the humiliation of explicit and certain rejection.")  But a charge complaining only of discrimination against those persons who submitted applications would not reasonably prompt an investigation into discrimination against non-applicants.  *Smith,* 904 F.3d at 1164 (noting courts must examine "the scope of an EEOC investigation which would reasonably grow *out of the charges actually made* ….").  The difference between claims by a set of identifiable applicants and claims by an unknown number of non-applicants is potentially significant in scope – including in terms of the number of claims, the factual and legal issues involved, and the employer's potential liability. Under the circumstances, the court concludes Plaintiffs have failed to exhaust claims of discrimination in hiring by Spirit against laid-off persons who did not file any job application.  *Cf. Freeman v. Oakland Unif. Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (finding liberal construction of EEOC charges is limited by principles of notice and fair play).

4.  Exhaustion of hiring claims outside 300-day window.  Spirit next argues that because a charge must be filed within 300 days after an unlawful practice occurs,[4] and because a claim arising after the filing of a charge cannot be exhausted by that charge, the court "must dismiss all claims that fall outside the time period covered by a Charge." (Doc. 525 at 15.)  It argues that Plaintiffs "failed to exhaust hiring claims arising more than 300 days prior to or any time after each Plaintiff's respective discharge," and that the court must therefore "dismiss all Charging Parties' ADA and ADEA claims which arose outside the 300-day lookback period."  (*Id.* at 15-16.)  In response, Plaintiffs say this case "concerns an alleged continuing pattern of discriminatory conduct," such that Plaintiffs' claims "are not limited by the date of the last-filed EEOC charge."

---

[4] In a "deferral state" such as Kansas, an ADEA or ADA administrative complaint must be filed with the EEOC within 300 days "after the alleged unlawful practice occurred" [ADEA] or "of the challenged employment action" [ADA]. *Nunez v. Lifetime Prods., Inc.,* 725 F. App'x 628, 631 (10th Cir. 2018).  Claims based on an employer's discrete discriminatory acts prior to that 300-day window are generally not actionable.  *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002).  The discrete acts to which that rule applies include "termination, failure to promote, … [and] refusal to hire…." *Id.*

(Doc. 534 at 12-13.)  Referring to *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), in which the Supreme Court addressed the 300-day limit (or 180 days in some cases) for exhausting discrimination claims, Plaintiff argues that "pre-*Morgan* law governs this case, and Plaintiffs' allegations of a continuing violation remain valid" because Plaintiffs have alleged an ongoing pattern of discrimination.  (Doc. 534 at 13.)

In *Morgan,* the Supreme Court held that a plaintiff challenging a discrete act must file a charge within 300 days from when the unlawful practice occurred.  The Court noted it had repeatedly interpreted the term "practice" (in "unlawful employment practice") to apply to "a discrete act or single 'occurrence,' even when it has a connection to other acts."  *Morgan,* 536 U.S. at 111.  The Court thus rejected a "continuing violation doctrine" that would have allowed discrete acts occurring outside the 300-day window to be considered timely if they were sufficiently related to acts that occurred within the 300-day period.  Such "discrete … acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," because "[e]ach discrete … act starts a new clock for filing charges alleging that act."  *Morgan,* 536 U.S. at 113.  Discrete acts "such as termination, failure to promote, denial of transfer, or refusal to hire" fall within this rule.  *Id.* at 114.  By contrast, the Court noted, hostile work environment claims are based on the cumulative effect of repeated acts and are different in kind from discrete acts.  *Id.*  In a hostile environment claim, separate individual acts form part of a single unlawful employment practice, and thus a claim is timely as long as a charge is filed within 300 days of any act that forms part of the hostile work environment.  *Id.* at 118.  As Plaintiffs point out, *Morgan* stated in a footnote that

it had "no occasion to consider the timely filing question with respect to 'pattern or practice' claims brought by private litigants…." *Id.* at 115 n.9.[5]

Plaintiffs' invocation of a "pattern or practice" of discrimination does not render the *Morgan* rule inapplicable under the facts of this case. The gravamen of the claims asserted is that Spirit unlawfully terminated Plaintiffs' employment and then refused to hire them. *Cf. McClelland v. Deluxe Fin. Svcs., Inc.*, 431 F. App'x 718, 731 (10th Cir. 2011) ("The phrase 'pattern and practice' is not a shibboleth which, once uttered, puts the defendant on alert that the limitations period is tolled.") These are clearly "discrete acts" within the meaning of *Morgan* that must be challenged within 300 days of when the unlawful acts occurred. *See Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1185-86 (10th Cir. 2003) (claims cannot be premised on an untimely discrete act "even if the discrete act was part of a company-wide or systemic policy."); *see also Chin v. Port Auth. of New York & New Jersey,* 685 F.3d 135, 157 (2d Cir. 2012) ("Each of our sister circuits has held that an allegation of an ongoing discrimination policy does not extend the statute of limitations where the individual effects of the policy that gave rise to the claim are merely discrete acts."); *Tademe v. St. Cloud State Univ.*, 328 F.3d 982, 988 (8th Cir. 2003) ("Although [the plaintiff] argues that the district court failed to consider that he was asserting a pattern-or-practice of discrimination, *Morgan* makes clear that the failure to promote, refusal to hire, and termination are generally considered separate violations."); *Villarreal v. R.J. Reynolds Tobacco Co.,* 702 F. App'x 797, 799 (11th Cir. 2017) (plaintiff's claim of a pattern or practice did not exempt his claim from *Morgan*; plaintiff "is not challenging the cumulative effect of [defendant's] multiple refusals to hire older applicants; instead he is challenging each individual refusal-to-hire.") *Cf. Lincoln v.*

---

[5] A "pattern or practice" method of proving discrimination is available when a plaintiff can establish that discrimination "was the company's standard operating procedure [--] the regular rather than the unusual practice." *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336 (1977).

*BNSF Ry. Co.,* 2020 WL 4000912, at \*10-11 (D. Kan. July 15, 2020) (rejecting claim that a "pattern of conduct" or a "continuing violation" rendered *Morgan* inapplicable; "[e]ach time BNSF declined to place Mr. Mosbrucker in a job he had applied for, it constituted a separate and discrete incident of alleged discrimination or retaliation" that must be exhausted).

Nevertheless, the court concludes that Spirit's motion to dismiss on this basis should be denied. Spirit's motion to dismiss does not identify specific claims by any particular Plaintiff that arose outside of the applicable 300-day period for filing a charge, making the issuance of a ruling on the issue uncertain and potentially advisory in nature. *See Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) ("A federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of the litigants in the case before them.") Spirit has not shown it is entitled to dismissal of any claims on this basis.

5. <u>Charging Plaintiffs Ballard, Denny, Ensor, Koch, Poole, Sha, Sprague, Tolson, and Newman – exhaustion of failure-to-hire claims</u>. Spirit points out that these Plaintiffs filed their own EEOC charges for discriminatory termination but did not file charges for discriminatory failure-to-hire. They now seek to piggyback on failure-to-hire charges filed by other Plaintiffs. Spirit argues that because these Plaintiffs filed their own EEOC charges, they cannot piggyback on the charges of other employees, such that their failure-to-hire claims were not administratively exhausted. (Doc. 525 at 17.)

Allowing the failure-to-hire claims of these Plaintiffs to proceed is consistent with the rationale of the single filing rule, which allows a person to join a discrimination suit "so long as his 'unexhausted claims stem from the same conduct as the filed charges,' and 'the named plaintiff filed a timely administrative charge.'" *Fulcher v. City of Wichita,* 387 F. App'x 861, 862 (10th Cir. 2010) (citing *Foster,* 365 F.3d 1191, 1197 (10th Cir. 2004).) It is considered "useless" to

require each co-plaintiff to file his own EEOC charge "in situations in which the employer is already on notice that plaintiffs may file discrimination claims, thus negating the need for additional filings." *Foster,* 365 F.3d at 1197. The underlying principle "is to give effect to the remedial purposes of the ADEA and to not exclude otherwise suitable plaintiffs from an ADEA class action simply because they have not performed the useless act of filing a charge." *Id.* (citation omitted.)

The failure-to-hire charges filed by 17 other persons against Spirit stem from the same conduct challenged by the above-named Plaintiffs – namely, that following the 2013 RIF, Spirit rehired younger workers but rejected all applications from laid-off older workers, and thereby discriminated (according to the charges) by its "failure to hire me and others similarly situated for the available positions we have applied for…." (Doc. 525-2 at 27.) The filers stated they wanted their charges filed "on behalf of myself and all others similarly situated." (*Id.*) These allegations should have put Spirit on notice of potential claims by other laid-off older workers whose applications Spirit rejected. Moreover, all of these failures-to-hire occurred in the same general time frame. Such circumstances satisfy the requirements and purposes of the single filing rule. *Cf. Foster,* 365 F.3d at 1199 (noting factors for determining when the single filing rule applies).

Spirit cites several cases for the proposition that a plaintiff who files his or her own charge is "bound to the scope" of that charge and "may not assert other claims, even if some other Charging Plaintiff has exhausted those other claims." (Doc. 525 at 16.) There are numerous cases stating that a plaintiff who files his or her own EEOC charge may not piggyback on the charge of another person, although the only Tenth Circuit case cited for that proposition is *O'Neal v. Thompson,* 54 F. App'x 301 (10th Cir. 2002). In that case, one plaintiff (Wilkins) filed her own EEOC charge and obtained a right-to-sue letter, but then waited seven months before attempting

to pursue her claims in court.  She invoked the single filing rule and attempted to join the timely-filed suit of another employee, but the court concluded her claim was properly dismissed for failure to file her lawsuit within 90 days of receiving a right-to-sue letter.  *Id.*  In another case cited by Spirit, *Mooney v. Aramco Svcs. Co.*, 54 F.3d 1207 (5th Cir. 1995), the court said that an employee, "by failing to assert a particular allegation in his charge, has necessarily excluded himself from the class of persons purportedly covered by the charge of another," such that "the EEOC and the employer are given no notice and no opportunity to remedy his complaint."  *Id.* at 1223-24.  The court is not persuaded the reasoning of such cases applies here.  Here, there were two discrete employment actions at issue – terminations and failures-to-hire – which took place at different times, and which prompted two different sets of EEOC charges.  The above-named Plaintiffs filed charges concerning their terminations in or around April of 2014.  (Doc. 525-2 at 2.)  At that time, no charges were filed by any Plaintiffs concerning Spirit's failure-to-hire after the RIF.  About six months later, several Plaintiffs filed charges concerning the failure-to-hire and specifically indicated they wanted those charges filed on behalf of all similarly situated persons. EEOC right-to-sue letters did not issue (including to the above-named Plaintiffs) until May 31, 2016, and the complaint in this action was filed within 90 days thereafter.  (Doc. 1.)  The above-named Plaintiffs were named in the initial complaint.

Spirit has not shown the above-named Plaintiffs are invoking the single filing rule to avoid a statute of limitations (as in *O'Neal*), and any argument that Spirit was deprived of notice of the piggybacked claims (as in *Mooney*) is unpersuasive given the timing of events and the contents of the two groups of EEOC charges alleging discriminatory termination and failure-to-hire.  If the single filing rule is a valid exception to the statutory exhaustion requirement – and the Tenth Circuit has determined that it is – its requirements and purposes were satisfied with respect to the

claims of above-named Plaintiffs for discriminatory failure-to-hire.  The motion to dismiss those claims for failure to exhaust is denied.

**B. Whether the individual ADA claims of the "New ADA Plaintiffs"[6] are time-barred.**

Spirit argues the individual claims of the New ADA Plaintiffs are barred because they were not filed within 90 days of receipt of a right-to-sue letter from the EEOC.  *See* 42 U.S.C. §12117(a) (ADA provision adopting Title VII procedures, including 42 U.S.C. §2000e-5(f)(1) requiring a person claiming discrimination to bring a civil action within 90 days of receiving notice from the EEOC).

A number of Plaintiffs filed EEOC charges alleging disability discrimination and asserted individual ADA claims in this lawsuit within 90 days of receiving a right to sue letter.  The New ADA Plaintiffs argue they are entitled to rely on those timely filings in asserting their own individual ADA claims, notwithstanding that the New ADA Plaintiffs did not assert their claims until three years after this suit was filed.  (Doc. 534 at 17) (citing *Anderson v. Unisys Corp.,* 47 F.3d 302 (8th Cir. 1995)).  Spirit, on the other hand, contends a plaintiff asserting an individual claim must file or join a suit within the same 90-day period applicable to the charging party on whom the plaintiff is piggybacking.  (Doc. 525 at 18) (citing *Bolton v. Sprint/United Mgmt. Co.,* No. 05-2361-JWL, 2006 WL 1789142 (D. Kan. June 29, 2006)).  Because the New ADA Plaintiffs did not assert their claims until well after that 90-day period passed, Spirit argues the claims of the New ADA Plaintiffs are time-barred.

Spirit has the better of the argument.  It is true that in *Anderson,* the court said plaintiffs who file administrative charges are bound by the 90-day statute of limitations but as to plaintiffs

---

[6] The New ADA Plaintiffs, who were added to the suit in the First Amended Complaint (Doc. 519), are identified by Spirit as: Doyon, Ballard, Byram, Chandler, Chavez, Hopper, Hottman, Hutchinson, Kellams, Lawelling, Meadows, Payne, Roberts, Russell, Samo, (Shane) Schmidt, Tieu, Ward, Weber, and West. (Doc. 525 at 8.)

who have never filed an administrative charge, "we deem it reasonable to permit them to join suit as long as the claimant on whose administrative filing they have relied timely files suit after receiving right-to-sue letters…." *Anderson,* 47 F.3d at 309.  But allowing individual ADA claims to be initiated several years after administrative remedies have been exhausted – as the New ADA Plaintiffs seek to do here – is flatly contrary to section 2000e-5(f), in which Congress set a 90-day limit for the obvious purpose of requiring the prompt filing and resolution of employment discrimination claims.

The better rule in this circumstance is the one indicated by Judge Lungstrom in *Bolton*: an employee's individual claim "will be considered timely so long as it was filed within 90 days of the date that the individual upon whose charge he is piggybacking received his or her notice of right to sue." *Id.*, 2006 WL 1789142, at *4.  *See also id.* (citing *Bowers v. Xerox Corp.,* 1995 WL 880773, at *4 (W.D.N.Y. May 5, 1995) ("The rule that should apply, therefore, is that a plaintiff seeking to 'piggyback' onto the administrative charge of another would be subject to the same statute of limitations as those persons similarly situated upon whose charge he relies. Put another way, plaintiffs' time to file this action ran out 90 days from the day that the last actual plaintiff similarly situated received their right-to-sue letter.")  It is one thing to excuse repetitive administrative charges, but another to excuse the statutory deadline for filing a lawsuit after administrative remedies have been exhausted.  Although an individual who piggybacks on the charge of another might not receive any right-to-sue notice from the EEOC (the notice that ordinarily triggers the 90-day limitations period), that is so only because that person's EEOC filing has been excused as an unnecessary duplication.  There is no reason it should grant the person an open-ended period in which to file a lawsuit.  It is only equitable to subject that person to the same 90-day limit for filing suit that applies to all other employees.  There is no obvious reason why the

filing of a suit by one individual who exhausted remedies should satisfy the statute of limitations with respect to another person who has their own individual claim.  Until an individual files a claim in a lawsuit, an employer has no concrete notice of the claim or awareness of its potential liability, and there can be no judicial resolution of the claim.  *Cf. Thiessen,* 267 F.3d at 1110 (holding as long as the EEOC and the company are aware of the nature and scope of the allegations, the purposes behind the administrative filing requirement are satisfied and no injustice or contravention of congressional intent occurs by allowing piggybacking).

The New ADA Plaintiffs alternatively argue their claims are timely because they relate back to the filing of the original complaint under Fed. R. Civ. P. 15(c)(1)(B).  Rule 15(c)(1)(B) provides that an amendment to a pleading "relates back to the date of the original pleading when … the amendment asserts a claim … that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading…."  *Id.*  The purpose of the rule is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on the merits."  *McClelland v. Deluxe Fin. Svcs., Inc.,* 431 F. App'x 718, 723 (10th Cir. 2011) (quoting *Krupski v. Costa Crociere S.p.A.,* 130 S. Ct. 2485, 2494 (2010)). Although a defendant has a strong interest in repose, repose should not be a windfall for a defendant who possesses sufficient notice of impending claims.  *Id.* (citing *Krupski,* 130 S. Ct. at 2494).  "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide."  *Id.* (quoting *Baldwin Cnty. Welcome Cntr. v. Brown,* 466 U.S. 147, 149 n.3 (1984)). "The same general standard of notice applies regardless of whether a litigant seeks to add defendants, plaintiffs, or claims."  *Id.* at 723-24.

The court concludes the individual claims of the New ADA Plaintiffs do not relate back because the amendment does not assert claims "that arose out of the conduct, transaction, or occurrence set out" in the original complaint and because Spirit would be prejudiced by the addition of new plaintiffs asserting such claims.[7]  In arguing otherwise, Plaintiffs overlook or downplay the fact that these are individual – not class or collective – claims of disability discrimination by persons not identified in the original complaint.  (For example, Plaintiffs repeatedly refer to "the opt-in Plaintiffs' ADA claims," but these are individual claims, not collective or class action claims.)  The circumstances under which these specific individuals were terminated and their applications for employment were rejected were not part of the original complaint.  Their individual disabilities, which form the bases of their ADA discrimination claims, were not set forth in the complaint, and their qualifications for positions they sought were not in the complaint.  These are new parties asserting individual claims distinct from those in the initial complaint. Their claims may be substantially similar to claims asserted by others in the original complaint, but they do not arise out of actions Spirit took in terminating or rejecting the applications of those other employees.  Under the circumstances, Plaintiffs have not demonstrated that Spirit would suffer no prejudice in its ability to defend the merits of these new claims.  The initial complaint was filed on July 11, 2016.  (Doc. 1.)  Since then, the parties have litigated a number of issues, engaged in extensive discovery (divided by agreement into phases), and

---

[7] The court need not determine whether Plaintiffs must show a "mistake concerning the proper party's identity" for their amendment to relate back under Rule 15(c).  *Cf. Pipeline Productions, Inc. v. Madison Cos., LLC,* 428 F. Supp. 3d 591, 604 (D. Kan. 2019) (finding that "new plaintiffs must satisfy each of the four express requirements" in Rule 15(c)(1)(C), including showing a mistake concerning the proper party's identity.)  Rule 15(c)(1)(C) applies when an amendment "changes the party or the naming of the party against whom a claim is asserted." *Id.*  Although comments to the rule suggest "the attitude taken … toward change of defendants extends by analogy to amendments changing plaintiffs," it is not at all clear how a mistake concerning identity would apply where *new plaintiffs* are added.  *See Pipeline Productions,* 428 F. Supp. 3d at 604 (finding that the original plaintiffs must show that but for a mistake on their part concerning the proper party's identity, they would have included the new plaintiffs in the original complaint); *Nelson v. Cty. of Allegheny,* 60 F.3d 1010, 1015 (3d Cir. 1995) (examining whether defendants knew or should have known that but for a mistake they would have been sued by the new plaintiffs.)

conducted extensive mediation.   Now, nearly three years later, the amended complaint adds approximately twenty new Plaintiffs with individual claims alleging that they – or perhaps members of their families – had one or more disabilities or were regarded as having one or more disabilities or had a record of having a disability, during "relevant time periods" when they were terminated or applied for other positions, and that Spirit discriminated against them on the basis of these disabilities.  (Doc. 522 at 88-89.)  Gathering the evidence relevant to these claims may not even be possible *seven years* after the events in dispute.  Even if it is possible, it would likely be significantly more burdensome and expensive as a result of the delay in notifying Spirit of these claims.  *Cf. Nelson*, 60 F.3d at 1014–15 ("[T]he 'prejudice' to which the Rule refers is that suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale.").

"Statutes of limitations, which 'are found and approved in all systems of enlightened jurisprudence,' ... represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (citation omitted.)  The court concludes the motion to dismiss the individual ADA claims of the New ADA Plaintiffs should be granted based on the 90-day deadline for filing suit adopted by 42 U.S.C. § 12117(a).

### C. Disparate impact failure-to-hire claims under the ADEA.

In the initial complaint, Plaintiffs' fifth claim for relief alleged age discrimination based on a theory of disparate impact, relating to Spirit's failure to hire them after the July 2013 layoffs. (Doc. 1 at 80) (citing 29 U.S.C. § 623(a)(2)).  The claim alleged that Spirit implemented a policy "[a]fter July 2013 … of rejecting applications for open positions from individuals terminated in

the July 2013 RIF," which "had a significant adverse impact on the work opportunities of former Spirit employees age 40 or above…." (Doc. 1 at 80.)  The court found these allegations failed to state a claim because although § 623(a)(2) protects employees from the discriminatory adverse impacts of an employer's policies, it does not extend to an employer's failure to hire non-employee job applicants (including former employees) such as Plaintiffs. (Doc. 454.)  In response to Plaintiffs' assertion that they in fact qualified as "employees" because Spirit developed the challenged no-hire policy while they were still employees, the court pointed out there was no such allegation in the complaint.  (*Id.* at 11.)

In response to the court's ruling, Plaintiffs amended the fifth claim by deleting the allegation that Spirit developed the challenged policy "after July 2013," and alleged instead that Spirit developed the policy "[w]hile planning the July 2013 RIF."  (Doc. 522 at 84.)   Spirit now moves to dismiss the amended claim, arguing it is still deficient because it does not allege that the challenged policy adversely affected Plaintiffs while they were employees.  Alternatively, Spirit argues that if Plaintiffs were impacted by the policy while still employed, then dismissal would be warranted as to those Plaintiffs who signed a waiver of claims when their employment with Spirit was terminated.  (Doc. 525 at 19-20.)  For their part, Plaintiffs contend Spirit developed policies altering performance reviews and against re-hiring laid-off older workers while Plaintiffs were still employees.  Plaintiffs thus argue their terminations "and their inability to be recalled or rehired stem from the impact of Spirit's conduct preceding the July 2013 terminations."  (Doc. 534 at 21.) In other words, "[a]t the time these policies were put in place, Plaintiffs still had an employment relationship with Spirit," and the policies ultimately "deprived [the Plaintiffs] of employment opportunities," such that a disparate impact claim is proper "even under the Court's restrictive interpretation of the statute."  (*Id.* at 22.)  As for Spirit's alternative argument that waivers signed

by many of the Plaintiffs would bar any such claims, Plaintiffs argue "these claims were not yet ripe when Plaintiffs waived their existing claims," such that the waivers could not have barred the claims.  (*Id.*)

The court will not rehash the prior discussion of § 623(a)(2) except to reiterate its finding that "as used in § 623(a)(2), 'individual' means a person who has an employment relationship with an employer at the time the employer's challenged limitation, segregation, or classification has an adverse effect."  (Doc. 454 at 15; Doc. 519 at 4.[8])  Plaintiffs' efforts to overcome this limitation on the scope of the statute are ultimately unpersuasive.  For reasons discussed at length by the court in its prior orders – and discussed in *Kleber v. Carefusion Corp.,* 914 F.3d 480 (7th Cir.) (*en banc*), *cert. denied*, 140 S. Ct. 306 (Oct. 7, 2019), and *Villarreal v. R. J. Reynolds Tobacco Co.,* 839 F.3d 958 (11th Cir. 2016) (*en banc*), *cert. denied,* 137 S. Ct. 2292 (June 26, 2017) – section 623(a)(2) does not provide relief for an employer's failure to hire non-employee job applicants such as Plaintiffs.  The amended complaint at issue here identifies the challenged policy as one of "rejecting applications for open positions from individuals terminated in the July 2013 RIF."  (Doc. 522 at 84.)  That policy could only have had an adverse effect on Plaintiffs subsequent to their employment with Spirit, when they submitted applications and were rejected for open positions after the July 2013 layoffs.  At that point Plaintiffs were no longer employees of Spirit.  They were non-employee job applicants.  No amount of massaging the allegations of the complaint or attempting to spin a web between events prior to the 2013 layoffs and the subsequent rejection of Plaintiffs' applications for employment alter that fact.  Accordingly, the court concludes that Spirit's motion to dismiss the disparate impact failure-to-hire claim in Count Five should be granted.

---

[8] The court allowed Plaintiffs to amend the fifth claim but noted that arguments about whether it stated a valid claim for relief would be reserved until after briefing by the parties. (Doc. 519 at 7.)

### D. "Deterred applicant" claims.

Spirit contends that all deterred applicant failure-to-hire claims must be dismissed because Plaintiffs' own allegations show it would not have been futile for them to apply for Spirit jobs. (Doc. 525 at 22.)  Even if the allegations of futility were sufficient, Spirit argues the deterred applicant Plaintiffs cannot assert individual ADA or collective ADEA claims.  (*Id.* at 24.)

Because the court has already determined that Plaintiffs did not exhaust claims that they were deterred from applying for Spirit jobs, the deterred applicant claims must be dismissed based on the failure to exhaust.  The court therefore does not address whether the allegations of futility in the amended complaint are sufficient and/or whether such claims are otherwise precluded as to individual ADA or collective ADEA claims.

### E.  Miller and Sha's failure-to-hire claims.

Spirit points out that forms filed by these two Plaintiffs consenting to join the collective action did not have boxes checked indicating they had applied for reemployment with Spirit or were discouraged or deterred from applying for reemployment.  (Docs. 94, 98.)  Spirit thus argues their failure-to-hire claims must be dismissed.  (Doc. 525 at 25.)  In response, Plaintiffs note the amended complaint alleges that Miller applied for multiple positions with Spirit and alleges that Sha was discouraged and deterred from applying for positions by Spirit's policies.  Plaintiffs assert this "inadvertent failure" to check the boxes on the consent form does not negate the allegations in the amended complaint.

The court will deny the motion to dismiss the failure-to-hire claim of Plaintiff Miller.  Spirit disputes whether his failure to check a box on the consent form was inadvertent (Doc. 540 at 10), but that is clearly a factual question the court cannot resolve on a motion to dismiss.  His allegations in the amended complaint are sufficient to state a claim for relief.  As for Plaintiff Sha, the court

will grant the motion to dismiss his failure-to-hire claim, as it is based on an allegation that Sha was deterred or discouraged from applying for any position, and the court has determined that such claims were not exhausted by any charge before the EEOC.

**F. Abandoned claims**.

Spirit argues the "Estate of James Newman," named as a Plaintiff in the amended complaint, is not a proper party and must be dismissed.  Plaintiffs state in response that the estate has agreed to dismiss the claim.  (Doc. 534 at 4.)  Accordingly, the motion to dismiss is granted as uncontested with respect to the Estate of James Newman.

Spirit also moves to dismiss the termination and OWBPA claims previously ruled upon by the court that Plaintiffs have realleged in the amended complaint.  The request appears to be unopposed, as Plaintiffs' response does not address the issue.  The court's ruling on summary judgment (Doc. 385) remains the law of the case; Spirit's motion to dismiss the re-pleaded OWBPA claims that were previously dismissed is accordingly granted.

**IV. Conclusion.**

Spirit's motion to dismiss (Doc. 524) is GRANTED IN PART AND DENIED IN PART as follows.  The motion is GRANTED as to:

1) Plaintiffs' "deterred applicant" claims; such claims are DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies;

2) the individual ADA claims of the New ADA Plaintiffs (Plaintiffs Doyon, Ballard, Byram, Chandler, Chavez, Hopper, Hottman, Hutchinson, Kellams, Lawelling, Meadows, Payne, Roberts, Russell, Samo, Shane Schmidt, Tieu, Ward, Weber, and West); the individual ADA claims of the New ADA Plaintiffs are DISMISSED as time-barred under 42 U.S.C. §12117(a) and 42 U.S.C. §2000e-5(f)(1);

3) Plaintiffs' fifth claim for relief alleging disparate impact age discrimination for Spirit's failure to hire various Plaintiffs; the claim is DISMISSED for failure to state a claim upon which relief can be granted under 29 U.S.C. § 623(a)(2);

4) claims by Plaintiff Sha asserting discrimination in Spirit's failure to hire him; the claims are DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies

5) claims by the Estate of James Newman; such claims are DISMISSED WITHOUT PREJUDICE; and

6)  the termination and OWBPA claims previously ruled upon by the court that Plaintiffs have realleged in the amended complaint are DIMISSED for the same reasons previously stated.

The motion is otherwise DENIED.  IT IS SO ORDERED this 11th day of August, 2020.

_____ s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE