IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DONETTA RAYMOND, *et al.*,

        Plaintiffs,

v.                                    Case No. 16-1282-JWB-GEB

SPIRIT AEROSYSTEMS HOLDINGS, INC., and
SPIRIT AEROSYSTEMS, INC.,

        Defendants.


## MEMORANDUM AND ORDER

      This case comes before the court on Plaintiffs' motion to bifurcate the trial.  (Doc. 573.)
The motion has been fully briefed and is ripe for decision.  (Docs.  574, 580, 583.)  For the reasons
stated herein, the motion to bifurcate is DENIED.

### I.  Background

      Plaintiffs' first amended complaint (Doc. 522) asserts various claims, including the
following.  Twenty-four named Plaintiffs assert a collective action under the Age Discrimination
in Employment Act (ADEA) on behalf of themselves and similarly-situated former employees of
Spirit AeroSystems, Inc. ("Spirit"), challenging both their termination from employment in a
reduction-in-force on July 25, 2013, and their exclusion from new job openings thereafter.  (*Id.* at
3.)  Plaintiffs seek relief from "Spirit's misconduct arising from its centrally planned and
administered group layoffs that targeted and/or disproportionately affected older employees," as
well as Spirit's refusal to rehire them. (*Id.* at 4.)  The named Plaintiffs and other former employees
who have opted-in to the collective action also assert individual ADEA claims, and some
additionally bring individual claims under the Americans with Disabilities Act (ADA) and/or the

Family and Medical Leave Act (FMLA).  (*Id.*at 3.)  According to Plaintiffs, "63 Plaintiffs have ADEA pattern-or-practice claims, and 23 Plaintiffs have additional ADA and/or FMLA claims," although those "numbers are approximate, as Plaintiffs' counsel is [as of September 14, 2020] still in the process of determining the exact numbers of Plaintiffs whose claims were impacted" by the court's prior order on Spirit's motion to dismiss.  (Doc. 574 at 6-7.)

Plaintiffs' current motion asks the court to "bifurcate trial into liability and damages phases by following the framework outlined by the Supreme Court in *Int'l. Bhd. of Teamsters v. United States,* 431 U.S. 324 (1977)."  (Doc. 574 at 2.)  The motion argues bifurcation will "assure the orderly and efficient resolution of all Plaintiffs' claims" and that without it "the parties will spend many additional months – and incur hundreds of thousands of dollars more in attorney's fees and costs – engaging in discovery that can be postponed or even avoided altogether."  (*Id.*)

Plaintiffs argue they have "already obtained significant proof of a pattern-or-practice of discrimination" and propose a two-stage trial.  (*Id.* at 11.)  In the first stage, Plaintiffs propose a jury should decide whether Spirit has engaged in a pattern or practice of intentional age discrimination under the ADEA as to termination and failure to rehire; whether Spirit's practices had a disparate impact under the ADEA with respect to termination; whether Spirit's practices were based on a reasonable factor other than age (an ADEA defense); and whether Spirit's conduct meets the standard for ADEA liquidated damages.  (*Id.* at 11-12.)  If liability is found, Plaintiffs say, the court would then decide injunctive relief.  In the second stage, Plaintiffs argue the court should conduct proceedings (perhaps with the aid of a special master) on individual ADEA injunctive relief, amounts owed, and individual defenses; and proceedings on individual ADA and FMLA claims, including injunctive relief, punitive damages, amounts owed, and individual

defenses. (*Id.* at 12-13.) Plaintiffs argue this approach is consistent with *Teamsters,* with Tenth Circuit precedent, and with Fed. R. Civ. P. 42(b). (*Id.* at 14.)

Spirit opposes the motion. It argues the motion improperly seeks to bifurcate discovery as well as trial, that it is premature because the court has yet to rule on decertification and summary judgment motions, that Plaintiffs have not cited evidence supporting a pattern-or-practice claim (and say it is "doubtful" Plaintiffs can establish a prima facie case), and the proposed trial plan would improperly allow Plaintiffs to assert inconsistent theories to different fact-finders in the two trial stages. (Doc. 580.) Spirit argues the "ultimate purpose" of the motion is to expand the scope of agreed-upon discovery and to conduct it in phases, which Spirit contends is impractical and would be prejudicial. (*Id.* at 10.)

In reply, Plaintiffs say "the point of ordering bifurcation now is to provide the parties with guidance on whether they should be preparing for 63+ individual trials, or a single pattern-or-practice trial with additional discovery and individual proceedings only if necessary." (Doc. 583 at 3.) Plaintiffs seek "to ensure that discovery proceeds efficiently, with clear expectations on both sides as to whether each of the individual claims should be addressed now or can be reserved for a later date." (*Id.* at 4.)

## II.  Standards

The federal rules provide in part that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues … [or] claims," provided the court preserves any federal right to a jury trial. Fed. R. Civ. P. 42(b).

The pattern-or-practice method of proving discrimination recognized by *Teamsters* ordinarily contemplates a bifurcated trial. In *Teamsters,* the Court said the government could prove a discrimination claim by showing that an employer's conduct was part of a pattern or

practice of discrimination against minority employees. *Teamsters,* 431 U.S. at 336. To do so, the government had to show "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Id.* It had to "establish by a preponderance of the evidence that racial discrimination was the company's standard operating procedure [--] the regular rather than the unusual practice." *Id.*

Demonstrating the existence of such a pattern or practice makes out a prima facie case and shifts the burden to the employer to prove that employees were not in fact victims of discrimination. *Id.* at 359.[1] *Teamsters* said that "[a]t the initial, 'liability' stage of a pattern or practice suit the [plaintiff] is not required to offer evidence that each person for whom it will seek relief was a victim of the employer's discriminatory policy." *Id.* at 360. The plaintiff's burden is to establish that such a policy existed, which shifts the burden to the employer to demonstrate that the plaintiff's proof is either inaccurate or insignificant. *Id.* A failure by the employer to meet its burden justifies an award of prospective relief, such as an injunction against the discriminatory practice. *Id.* at 361. But if the plaintiff seeks additional relief for employees, "a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief." *Id.* The proof of a pattern or practice "supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." *Id.* at 362. At the second (or remedial) stage of the trial, the plaintiff need only show that an individual unsuccessfully applied for a job and was therefore a potential victim of the policy. *Id.* If it does so, the person "will be presumptively entitled to relief," with the burden on the employer to demonstrate that the person was denied an employment opportunity for lawful reasons. *Id. See also Thiessen v. Gen. Elec. Cap. Corp.,* 267 F.3d 1095,

---

[1] In so finding the Court made clear that in pattern-or-practice cases, the above process ordinarily supplants the *McDonnell Douglas* burden-shifting framework applicable to individual claims. *See Teamsters,* 431 U.S. at 358-59.

1106 (10th Cir. 2001) ("Pattern-or-practice cases are typically tried in two or more stages.");
*Thompson v. Weyerhaueuser Co.,* 582 F.3d 1125, 1127 (10th Cir. 2009) (noting the Supreme Court
has concluded that trial proceedings involving pattern-or-practice claims should occur in a series
of specific stages).

When a pattern-or-practice claim is asserted, the court may also have to consider the
*Teamsters* framework in addressing summary judgment motions and motions to decertify a class.
*Thiessen,* 267 F.3d at 1108 (in considering a motion to certify or decertify, a district court "is
entitled to look past the pleadings and examine evidence produced during discovery, but when an
ADEA plaintiff relies upon a 'pattern or practice' theory and comes forward with legitimate
evidence to support that theory, the district court must take into account the [*Teamsters*]
framework…."). This does not mean a class must be certified whenever there is evidence of a
discriminatory pattern or practice – that turns on whether class members are similarly situated –
but the court must consider the issue under the *Teamsters* framework. *Id.* Similarly, a summary
judgment motion "must be analyzed in light of the orders of proof peculiar to pattern-or-practice
cases," so during the first stage of a pattern-or-practice case, a summary judgment motion "must
focus solely on whether there is sufficient evidence demonstrating that defendants had in place a
pattern or practice of discrimination during the relevant limitations period." *Id.* at 1109.

**III.  Discussion**

The court concludes that an order for bifurcation of the trial at this point would be
premature.  Plaintiffs concede Spirit should have the opportunity to file decertification and
summary judgment motions.  (Doc. 583 at 2.)  Until such motions are resolved, neither the court
nor the parties can say with any confidence what claims will survive motion challenges and
whether any pattern-or-practice claims will actually be tried.  Given the circumstances, including

the significant impact *Teamsters* bifurcation would have upon preparation for and the course of the trial, the court concludes it would not promote convenience, expedition, and economy – and would potentially result in prejudice – for the court to order a bifurcated trial at this point based upon a hypothetical state of affairs.

Plaintiffs effectively concede their motion is designed to alter the current discovery plan. The Phase II scheduling order, which was agreed to by the parties and which was filed in April of 2019, authorized Spirit to depose each of the Plaintiffs and 30 additional fact witnesses, and it allowed Plaintiffs to depose 48 fact witnesses. (Doc. 408 at 8.) Plaintiffs' motion to bifurcate now says they agreed to this number only "as a starting point" because it was sufficient "for the first stage of trial," but that if Plaintiffs "are forced to prepare" for a trial involving proof of individual claims then Plaintiffs "would require 250 depositions." (Doc. 574 at 14-15.) In response to Spirit's complaint that this represents an attempt to undo the discovery arrangements put in place well over a year ago, Plaintiffs respond with a non sequitur: "The Court can take with a grain of salt Spirit's wild rhetoric that Plaintiffs are going back on their word with respect to discovery. The fact is that discovery to date … has confirmed the legitimacy of Plaintiffs' pattern-or-practice claims." (Doc. 583 at 1.)

This case, which challenges Spirit employment decisions occurring in 2013 and before, was filed in 2016. Discovery formally commenced in October of 2016. The Phase II scheduling order setting deposition limits was filed in April of 2019. It is rather late in the day to suggest that the prior agreed-to discovery limits should be radically expanded. Plaintiffs' assertion that they only agreed to the previous limits "as a starting point" for "the first stage of trial" is unsupported by any language in the Phase II scheduling order or, for that matter, any other scheduling order. Discovery is being ably supervised by the magistrate judge and is proceeding according to a plan

that contemplates completion of all discovery prior to trial of the claims.  The court is not inclined to alter that plan and Plaintiffs have not shown good cause for doing so.  Given the passage of time, there is now a significant risk that potentially relevant evidence will be lost if it is not soon preserved by discovery.  The court notes the magistrate judge has now filed a Phase III scheduling order that requires completion of all fact depositions by June 18, 2021.  (Doc. 604 at 2.)  Adherence to that schedule is required if this case is to be resolved in the foreseeable future.

**IV.  Conclusion**

Plaintiffs' motion to bifurcate Trial (Doc. 573) is DENIED.  The denial is without prejudice to refiling at a later date.  IT IS SO ORDERED this 10th day of December, 2020.


_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE