## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DONETTA RAYMOND, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-1282-JWB-GEB** |
| | ) | |
| **SPIRIT AEROSYSTEMS HOLDINGS, INC., and** | ) | |
| **SPIRIT AEROSYSTEMS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER
## MEMORIALIZING RULINGS FROM MARCH 5, 2021 HEARING

On March 5, 2021, the Court conducted a discovery and motion hearing. Plaintiffs appeared through counsel, Randall Rathbun, James Kaster, and Matthew Frederickson. Defendants appeared through counsel, James Armstrong, Teresa Shulda, and Steven Moore. After review of the parties' briefs and consideration of the parties' oral arguments, the Court orally **DENIED** Defendant's motion to quash the deposition of Larry Lawson. (**ECF No. 629**.) This order memorializes the Court's rulings from the conference.

### I.    Background[1]

The significant factual history of this case has been discussed in detail in previous orders (*see, e.g.,* ECF Nos. 202, 233) and will not be repeated in full here. Generally, in

---

[1] Unless otherwise indicated, the information recited the parties' pleadings (Pls.' Compl., ECF No. 1; Am. Compl., ECF No. 522; Defs.' Answers, ECF Nos. 27, 601) and the briefing regarding the instant motion (ECF Nos. 629, 630, 633, 661, 662). This background information should not be construed as judicial findings or factual determinations.

July and August 2013, defendant Spirit AeroSystems ("Spirit")[2] conducted a "reduction in force" ("RIF") which terminated the employment of the named Plaintiffs and more than two hundred other workers. The workers were all members of SPEEA, a labor union. Plaintiffs claim the RIF eliminated a disproportionate number of Spirit's older employees. Spirit alleges Plaintiffs and others like them were discharged, and not considered for rehire, for lawful reasons—primarily their poor performance. Plaintiffs filed this collective action in July 2016, claiming Spirit wrongfully terminated their employment and/or later failed to consider them for new job openings because of their age and, in some cases, the older employees' (or family members') medical conditions and related medical expenses. In addition to the collective action claims under the Age Discrimination in Employment Act[3] ("ADEA"), some Plaintiffs also assert individual ADEA claims, while other Plaintiffs claim their termination violated the Americans with Disabilities Act[4] ("ADA") and/or the Family and Medical Leave Act[5] ("FMLA").

The unique procedural posture of this case was also addressed in prior decisions (*see, e.g.*, ECF No. 202) and will not be repeated to the extent addressed therein. Highly summarized, this case is progressing on a phased discovery plan, with the initial phase focused on the validity of releases signed by many Plaintiffs at termination. (Phase I Scheduling Order, ECF No. 153; modifications at ECF Nos. 178, 192, 215, 239, 249.)  The Phase I order concluded after resolution of early dispositive motions. The second phase of

---

[2] Throughout this Order, the use of "Spirit" will refer to defendant Spirit AeroSystems, as well as its parent company, defendant Spirit AeroSystems Holdings, Inc.
[3] 29 U.S.C. § 621 et seq.
[4] 42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008.
[5] 29 U.S.C. § 2601 et seq.

discovery focused on written discovery on the merits of Plaintiffs' wrongful termination claims. (Phase II Scheduling Order, ECF No. 408; modifications at ECF Nos. 416, 419, 459, 521.) The case has now progressed to a third phase of discovery focused on fact depositions, with expert discovery slated to begin in September 2021. (Phase III Scheduling Order, ECF No. 604.)

## II.     Defendant's Motion to Quash the Deposition of Larry Lawson (ECF No. 629)

Plaintiffs noticed former Spirit CEO Larry Lawson's deposition to occur by video on January 4,2021. (ECF No. 619.) Defendants then filed a motion to quash the deposition notice. (ECF No. 629.) After the motion was fully briefed, the Court considered the motion in the discovery conference held March 5, 2021.

As required by D. Kan. Rule 37.2, it appears the parties exchanged emails and letters on the issue on December 11 and 22, 2020, and January 6 and 7, 2021. (*See* Resp., ECF No. 630 at 2-3, Ex. A-1, A-2, A-3.)  However, it is unclear whether counsel actually spoke about the issue. The applicable local rule, D. Kan. Rule 37.2, is clear "[a] 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so." Although the Court could decline to decide the issue on that basis, due to the Court's history with these parties and in light of the conference held March 5, the Court in its discretion chooses to address the motion on its merits.

### A.     Parties' Positions

Defendants seek to quash the deposition of Spirit's former President and CEO Larry Lawson. Defendants claim Lawson has no unique personal knowledge of any issue relevant

to the claims or defenses in this case, and "anything Plaintiffs could learn from Lawson has been or could be obtained more conveniently, efficiently, and cost effectively from other witnesses." (ECF No. 630 at 1.) Defendants contend the request to depose Lawson is impermissibly cumulative and duplicative and serves only to harass Spirit, and asks to quash the deposition under Fed. R. Civ. P. 26(c) and 45(d). (*Id*.) Defendants argue under the "apex doctrine," Plaintiffs must meet the threshold question of showing Lawson has unique personal knowledge related to this case, and they cannot. Defendants maintain any information he has could be obtained more conveniently, efficiently and cost-effectively from other witnesses. (ECF No. 630 at 5.)

Defendants contend the "easiest, most efficient, and least costly method would be to ask those individuals who were actually involved in making and implementing [the layoff/failure to rehire] plans— Spirit Executive Samantha Marnick, Justin Welner (Vice President of Human Resources in 2013), and other Human Resources team members—not Lawson." (*Id*. at 11.) Defendants offered to make Marnick available instead, suggesting she has actual knowledge of issues in the case, as she was a Vice President and Chief Administrative Officer under Lawson, and was responsible for overseeing Spirit's HR activities, including the 2013 layoffs and later hiring. But Plaintiffs refused this proposal. Defendants argue Plaintiffs have already deposed Spirit's corporate representative, Welner, twice and have identified at least seven other HR executives and senior managers for deposition.

If the Court does not quash Lawson's deposition altogether, Defendants ask the Court to quash the deposition for now, pending deposition of the remaining fact witnesses

to see if Plaintiffs identify relevant facts that would be uniquely known by Lawson. (*Id*. at 13.)

Plaintiffs argue Lawson's declaration (ECF No. 630-16, Ex. B) denying involvement in the July 23, 2013 terminations and refusal to rehire is false, because the facts in the record—including summary judgment findings—show otherwise. (ECF No. 661 at 3.) Plaintiffs argue the facts in the earlier summary judgment motion show the prior Spirit CEO, Jeff Turner, was opposed to layoffs, but things changed when Lawson became the CEO. (*Id*. at 3.) Even if Lawson did not initiate the conversations, emails, or meetings the parties reference, Lawson was present at the meetings/discussions, and the "conversations that took place,. . . the significance Lawson gleaned from the information provided to him, and the subsequent business decisions Lawson made as a result, are currently unknown to Plaintiffs." (*Id*.) Plaintiffs contend Defendant "overlooked important facts showing Mr. Lawson's key role in the layoff and refusal to re-hire the Plaintiffs, and relied on a heightened 'apex' standard which is not the law in this District or Circuit, and, in any case, has no application to a former CEO." (*Id*. at 14.)

**B.   Legal Standards**

Defendants' request implicates two primary rules of federal procedure: Fed. R. Civ. P. 26 outlining the scope of discovery and limits on discovery, and Rule 45 involving the deposition subpoena to a non-party witness. In addition, both parties address the "apex doctrine" in briefing. Each standard is briefly outlined.

1.      **Fed. R. Civ. P. 26**

Rule 26(b)(1) outlines the scope of discovery. This rule permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

Relevance at the discovery stage is broad,[6] and does not mean the information obtained would necessarily be admitted at trial. If the party seeking discovery meets its initial, minimal burden to demonstrate its request is relevant on its face,[7] the resisting party cannot rely upon a conclusory statement that the requested discovery is irrelevant.[8] It "must either demonstrate the discovery sought does not come within the broad scope of relevance defined in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm caused by the discovery would outweigh the presumption in favor of broad disclosure."[9] "Courts should lean towards resolving doubt over relevance in favor of discovery,"[10] and

---

[6] *See Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011 at *3 (D. Kan. June 3, 2008).

[7] *Speed Trac*, 2008 WL 2309011, at *2 (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* No. 05–2164-MLB-DWB, 2007 WL 2122437, at *4 (D. Kan. July 20, 2007).

[8] *XPO Logistics Freight v. YRC, Inc.*, No. 16-MC-224-CM-TJJ, 2016 WL 6996275, at *4 (D. Kan. Nov. 30, 2016) (citing *Speed Trac*, 2008 WL 2309011, at *3).

[9] *Id.*

[10] *Folger v. Medicalodges, Inc.*, No. 13-1203-MLB-KMH, 2013 WL 6244155, at *2 (D. Kan. Dec. 3, 2013) (citing *Jackson v. Coach, Inc.*, No. 07–2128–JTM–DWB, 2008 WL 782635, at *4 (D. Kan. Mar. 20, 2008); *Teichgraeber v. Mem'l Union Corp. of Emporia State Univ.*, 932 F. Supp. 1263, 1266 (D. Kan. 1996)).

the court has broad discretion over discovery matters and to decide when a protective order is appropriate.[11] "A subpoena that seeks irrelevant, overly broad, or duplicative discovery causes undue burden, and the trial court may quash it on those bases."[12]

Under Rule 26(b)(2)(C), the court must limit discovery if: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Rule 26(c) allows the court, for good cause, to issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense.  The Court then has broad discretion to utilize such a protective order to specifically define and/or narrow the disclosure or discovery, including the terms, timing, and method of discovery.[13]

### 2.    Fed. R. Civ. P. 45

Fed. R. Civ. P. 45 provides guidelines for the issuance of subpoenas to non-parties. Rule 45(d)(3)(A) requires the court to quash or modify a subpoena that requires disclosure of privileged or protected information or subjects a person to undue burden.  Although Rule 45 does not specifically include relevance or overbreadth as bases to quash a subpoena,

---

[11] *See S.E.C. v. Merrill Scott & Assoc., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) ("The district court has broad discretion over the control of discovery ...") (internal citations omitted); *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) ("Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.") (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984)).

[12] *Gilbert v. Rare Moon Media, LLC,* No. 15-mc-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (citing *Heartland Surgical Specialty Hosp.,* 2007 WL 2122437, at *5).

[13] Fed. R. Civ. P. 26(c)(1)(A)-(H).

"this court has long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34."[14] "A subpoena that seeks irrelevant, overly broad, or duplicative discovery causes undue burden, and the trial court may quash it on those bases."[15] But "[g]ranting a protective order that totally prohibits a deposition is considered a drastic action that will not be taken absent extraordinary circumstances."[16]

### 3.     Apex Doctrine

"Under the 'apex doctrine,' courts may 'provide some protection from depositions to high-level executives and government officials.'" This doctrine "recognizes that depositions of high-level officers severely burden those officers and the entities they represent, and that adversaries might use this severe burden to their unfair advantage."[17]

Other courts in this District note the "Tenth Circuit has not addressed the apex doctrine, but district courts within the Tenth Circuit have adopted different versions of [it]. Some courts do not apply any special test for apex depositions but do consider factors that

---

[14] *Martinelli v. Petland, Inc.*, No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted); *Martin v. Grp. 1 Realty, Inc.*, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *2 (D. Kan. July 1, 2013).

[15] *Gilbert v. Rare Moon Media, LLC,* No. 15-mc-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (citing *Heartland Surgical Specialty Hosp.,* 2007 WL 2122437, at *5).

[16] *Van Den Eng v. Coleman Co.*, No. 05-MC-109-WEB-DWB, 2005 WL 3776352, at *2 (citing *Horsewood v. Kids "R" Us*, 1998 WL 526589, at *5 (D. Kan. Aug. 13, 1998)).

[17] *See Ledbetter v. Int'l Ass'n of Machinists & Aerospace Workers*, No. 18-2546-DDC-GEB, 2020 WL 6868777, at *5 (D. Kan. Nov. 23, 2020) (citing *Lawson v. Spirit AeroSystems*, Inc., No. 18-1100-EFM-ADM, 2020 WL 1889016, at *4 (D. Kan. Apr. 16, 2020) (quoting *Tierra Blanca Ranch High Country Youth Program v. Gonzales*, 329 F.R.D. 694, 696 (D.N.M. 2019), objections overruled, No. 215CV00850KRSGBW, 2019 WL 1487241 (D.N.M. Apr. 4, 2019) (other citations omitted).

may be applicable when the deponent is a high-level executive."[18] Other district courts within this Circuit may

> protect a high level corporate executive from the burdens of a deposition when any of the following circumstances exist: (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought from the executive can be obtained from another witness; (3) the information sought from the executive can be obtained through an alternative discovery method; or (4) sitting for the deposition is a severe hardship for the executive in light of his obligations to his company.[19]

Two other opinions from the District of Kansas have analyzed the apex doctrine. In *Lawson v. Spirit AeroSystems, Inc.*, the court declined to apply the apex doctrine, but simply decided the issue on relevance and found the burdens to the high-level executives were inherently more than with other executives.[20] In *Van Den Eng v. Coleman Co.*, the court found the Tenth Circuit has never adopted any special test for executives.[21] The court noted, "motions for protective orders for Apex Officials are treated under the same standards as any other protective order, while taking into consideration special factors that may apply to such officials."[22]

In *Van Den Eng*, the court found the proposed deponent was no longer working for the defendant corporation, which weighed "against the application of the Apex doctrine." The court noted, "One purpose cited for use of the Apex doctrine is to protect high-level officials from harassing discovery efforts that would hinder their corporate responsibilities,

---

[18] *Lawson*, 2020 WL 1889016, at *4 (citing *Van Den Eng*, 2005 WL 3776352, at *2).
[19] *Id.* (quoting *Naylor Farms, Inc. v. Anadarko OGC Co.*, No. 11-CV-01528-REB-KLM, 2011 WL 2535067, at *1 (D. Colo. June 27, 2011); *see also Tierra Blanca*, 329 F.R.D. at 697 (D.N.M. 2019) (adopting the *Naylor* approach to the apex doctrine)).
[20] *Lawson*, 2020 WL 1889016, at *4-5.
[21] *Van Den Eng*, 2005 WL 3776352, at *2.
[22] *Id.*

[but here, the deponent] has no corporate responsibilities with which to interfere."[23] The court went on to apply the factors found in Rule 26(b) regarding scope of discovery to find the deposition relevant but imposed limitations under Rule 26(c) to permit the deposition but curtail its duration.[24]

### C.    Discussion

As described above, neither the District of Kansas nor the Tenth Circuit has expressly adopted the apex doctrine. Courts in this district have generally applied the Rule 26 factors for a protective order, but acknowledged special factors *may* apply in addition to Rule 26 standards.[25]

Defendants argue many courts apply the "special factors" to former as well as current executives (ECF No. 673, n.2)—but none of the cases cited are from the District of Kansas or the Tenth Circuit, which lessens their persuasive value. And at least one court in this district[26] has specified otherwise. In *Van Den Eng*, the court flatly "reject[ed] [defendant]'s assertion that high-level corporate executives ("Apex Officials") cannot be deposed unless the party seeking the deposition can show that (1) the executive has unique or special knowledge of the facts at issue and (2) the seeking party has exhausted other less burdensome avenues for obtaining the information sought."[27] As a threshold issue, the court noted because the proposed deponent was no longer working for the defendant

---

[23] *Id.*

[24] *Id*. at *2-3 (internal citations omitted).

[25] *See Lawson,* 2020 WL 1889016, at *5; *Van Den Eng*, 2005 WL 3776352, at *2.

[26] *Van Den Eng*, 2005 WL 3776352, at *2.

[27] *Id.*

corporation, this weighed against application of the apex doctrine.[28] Likewise, here, Lawson is retired and has "no corporate responsibilities with which [a deposition] would interfere."[29]

And, much as in the *Van Den Eng* case, here Defendant does not argue Lawson is too busy to be deposed, or some scheduling conflicts interfere with the taking of Lawson's deposition at any specific time. Although they claim the deposition is intended to harass Spirit, it is entirely unclear how the taking of a former executive's deposition is harassing to Spirit, and Defendant does not provide any evidence of how it could be harassing. More harmful to Defendants' argument is they fail to articulate any actual hardship either Spirit or Lawson would incur if he were deposed.

In the *Lawson* case, the court declined to apply the apex doctrine and analyzed the motion for protective order on such factors as whether the information sought would be obtained from other witnesses and whether the topics for deposition were relevant to the parties' dispute.[30] Although the court found the information might be obtained from others, and the information may be of "marginal (if any) relevance, and the depositions of the [current] high-level executives would involve more burden to defendant than the deposition of a regular employee," the court permitted the depositions, with a time limitation.[31]

But, even in *Lawson*, where the court placed limits on the depositions of two current executives, the depositions were allowed to proceed. And as noted in *Van Den Eng*,

---

[28] *Id.* at *2.
[29] *Id.*
[30] *Lawson*, 2020 WL 1889016, at *4-5.
[31] *Id.*

although the Court may grant a protective order quashing a deposition notice when the court finds the information sought is "*wholly irrelevant* to the issues in the case, the normal practice of this Court is to deny motions that seek to entirely bar the taking of a deposition."[32] On the arguments of the parties, the Court cannot say the information on which Plaintiffs wish to depose Lawson are "wholly irrelevant." The purpose of discovery is fact-finding—and Plaintiffs are, at minimum, trying to discern why Spirit was trying to reduce headcount in Wichita and how Defendant's methods or motivations for doing so changed when Lawson became CEO. (*See* Pl's Resp. ECF No. 661 at 4, citing uncontroverted facts in summary judgment briefing, ECF No. 385 at 10; 343-2 at ¶ 35.)

As for whether the deposition would be duplicative, it does seem Plaintiffs have deposed many of the Spirit employees named by Defendant who actually made the termination/hiring decisions and may have some duplicative knowledge. (*See* ECF No. 661 at 13.) But Plaintiffs argue no other employee, however relevant, can answer the question of the change in tactics from the prior CEO to Lawson's tenure when the layoffs occurred. And even the deposition cited by Defendants in their Reply suggests one of the differences between the 2013 layoffs and earlier terminations was "[they] had a [prior] CEO who was not aligned to doing layoffs." (ECF No. 673, Ex. C-9, Welner Dep. 47:21-22.)

Plaintiffs and Defendant disagree about the importance of various pieces of evidence and whether the evidence shows Lawson's personal involvement in the layoffs or decisions. Many or all the documents cited by Plaintiff as evidence of Lawson's personal

---

[32] *Van Den Eng*, 2005 WL 3776352, at *2 (citing *Horsewood,* 1998 WL 526589, at *5) (emphasis added.)

knowledge were prepared by others and simply sent to Lawson. (ECF No. 630, Exs. A-9, A-10, A-11, A-12.) This may show only that Lawson, as President and CEO, was being informed of the actions of his subordinates—not that he had any personal involvement in any decision by Spirit to layoff or not rehire any employees.

Ultimately, though, relevance during discovery is broad. Even if Lawson swears he has no personal knowledge, the Court finds—as have other courts—the mere denial of personal knowledge does not preclude the taking of his deposition.[33]

## III.   Conclusion

The information sought by Plaintiffs through the deposition of Larry Lawson seems at least minimally relevant in this fact-finding phase of discovery. Given the information which suggests Spirit may have changed course when it changed CEOs, it does not appear Lawson's deposition would be unreasonably cumulative, even if it does overlap with other testimony. And, Defendant has not demonstrated with more than conclusory statements how it, or Lawson, is burdened by the deposition or how it would be inconvenient. Because the Court finds no hardship imposed and the information sought is at least minimally relevant, the Court will not grant Defendant the "extraordinary relief of completely denying" Lawson's deposition.[34]

---

[33] *See, e.g., Van Den Eng*, 2005 WL 3776352, at *3; *Horsewood*, 1998 WL 526589, at *6 (denying protective order seeking to prevent deposition of VP of HR over claims he lacked personal knowledge); *see also Certain Underwriters*, 2012 WL 3879885, at *5 (allowing deposition of high level official over claims that he lacked personal knowledge because "[a] mere lack of personal knowledge does not establish good cause to preclude a requested deposition").
[34] *Van Den Eng*, 2005 WL 3776352, at *3.

Although it is within the Court's discretion to limit the duration of the deposition, it is already limited to four hours pursuant to the Phase II Scheduling Order (ECF No. 408, at 8.) As noted in *Van Den Eng*, "[four hours] should provide more than sufficient opportunity for Plaintiffs to challenge Defendant's claim that [Lawson] lacks personal information related to the issues in this case."[35] Because the deposition is already limited in duration, the deposition is permitted without limitation.

Therefore, for the reasons discussed in the March 5, 2021 hearing and as set forth above, in the Court's discretion, Defendant's motion to quash the deposition of Larry Lawson (**ECF No. 629**) is **DENIED**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 2nd day of April 2021.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[35] *Id.*